```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
 2                      NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4             Plaintiff,             )
          vs.                         )
 5                                    ) CRIMINAL NO.:
     JAMES IAN PICCIRILLI,            ) 1:19-cr-00060-SDT-1
 6                                    )
               Defendant.            )
 7   _____)

 8
                                       Baltimore, Maryland
 9                                     January 13, 2020
                                       1:30 p.m.
10
                      TRANSCRIPT OF PROCEEDINGS
11                        SENTENCING HEARING
             BEFORE THE HONORABLE STEPHANIE D. THACKER
12

13   For the Plaintiff:

14        Brandon Moore, Esquire
          Patricia McLane, Esquire
15          Assistant U.S. Attorneys

16
     For the Defendant:
17
          Richard Bardos, Esquire
18

19   Also Present:  Agent David Collier, ATF; Adam Smith, Probation
                     Judy Kahan, Paralegal
20
          Proceedings recorded by mechanical stenography, transcript
21   produced by computer.

22

23   _____
                     Patricia G. Mitchell, RMR, CRR
24                   Federal Official Court Reporter
                     101 W. Lombard Street, 4th Floor
25                     Baltimore, Maryland 21201
```

```
 1                    P R O C E E D I N G S
 2        (1:33 p.m.)
 3            THE CLERK:  All rise.  This Honorable Court now
 4    resumes in session, the Honorable Stephanie D. Thacker
 5    presiding.
 6            THE COURT:  Thank you.  You may be seated.
 7            Will the Government call the case, please.
 8            MR. MOORE:  Yes.  Good afternoon, Your Honor.
 9            THE COURT:  Good afternoon.
10            MR. MOORE:  This is United States versus James Ian
11    Piccirilli.  It's Criminal Number SDT-19-060.  Brandon Moore
12    and Patricia McLane on behalf of the United States.  Your
13    Honor, we are joined at counsel's table by David Collier; he's
14    the case agent here of the ATF.  We are here today for
15    sentencing.
16            THE COURT:  All right, thank you.  Would defense
17    counsel please note your appearance as well.
18            MR. BARDOS:  Good afternoon, Your Honor.  Richard
19    Bardos representing Mr. Piccirilli who is present to my left.
20            Would it be all right with the Court if my paralegal
21    slash investigator came and sat at the table with us?
22            THE COURT:  No problem.
23            MR. BARDOS:  That would be Judy Kahan.  Thank you,
24    Your Honor.
25            THE COURT:  All right.  Mr. Piccirilli and
```

1    Mr. Bardos, could you please stand, and I'll ask the clerk to

2    administer the oath to Mr. Piccirilli, please.

3              THE CLERK:  Please raise your right hand.

4         (Defendant sworn.)

5              THE CLERK:  Please state your full name for the

6    record.

7              THE DEFENDANT:  James Ian Piccirilli.

8              THE CLERK:  Thank you.

9              THE COURT:  Okay, Mr. Piccirilli, on November 4,

10   2019, you pled guilty to possession of an unregistered firearm

11   in violation of 26 United States Code, Section 5861(d), as

12   charged in Count 1 of the Superseding Indictment filed against

13   you, and at that time I conditionally accepted the plea pending

14   the preparation of a presentence investigation report.  Since

15   the time of the November 4, 2019, entry of your guilty plea in

16   this case, the United States Probation Office has prepared a

17   written presentence investigation report.

18             Mr. Bardos, did you receive a copy of the presentence

19   investigation report?

20             MR. BARDOS:  Both the draft and the final, Your

21   Honor, yes.

22             THE COURT:  Have you had the opportunity to review

23   those reports, the draft, and the final with Mr. Piccirilli?

24             MR. BARDOS:  Yes, ma'am.

25             THE COURT:  Mr. Bardos, having read the report and

```
1  discussed it with your client, is there any reason why
2  sentencing should not take place today?
3          MR. BARDOS:  Not based on the report, no, Your Honor.
4  I think we're ready for sentencing.
5          THE COURT:  Okay.  Mr. Piccirilli, have you had the
6  opportunity -- you may be seated if you'd like, Mr. Bardos.
7  Mr. Piccirilli, have you had the opportunity to review the
8  report?
9          THE DEFENDANT:  Yes, Your Honor.
10         THE COURT:  Have you also had the opportunity to
11 discuss its contents with your lawyer, Mr. Bardos?
12         THE DEFENDANT:  Yes, I have.
13         THE COURT:  Do you understand the contents of the
14 report?
15         THE DEFENDANT:  Yes, I do.
16         THE COURT:  All right.  Are you prepared to proceed
17 to sentencing today?
18         THE DEFENDANT:  Yes, Your Honor.
19         THE COURT:  Thank you.  You may both take your
20 seats.
21         MR. BARDOS:  Just to be clear, Your Honor, we've
22 reviewed the report.  There are sections of it we disagree
23 with, which I think the Court is aware.  As far as the content
24 other than the sentencing guideline computation, we have no
25 problems with the rest of it.
```

1    THE COURT:  Okay, yes, I understand.  I'm going to

2  get to the objections here in a second.  If you'll be seated,

3  thank you.

4    The Court has carefully reviewed the January 2, 2020,

5  presentence investigation report as well as the draft

6  presentence investigation report, and I have also read the

7  defendant's factual and legal sentencing memoranda filed on

8  December 27, 2019, and January 1, 2020, respectfully --

9  respectively, I should say, and I have read the Government's

10 sentencing memorandum filed on December 30, 2019, as well as

11 its response to the defendant's sentencing memorandum which was

12 filed on January 6, 2020.

13   I have also read each and every one of the letters

14 that were submitted to the Court on January 10, 2020.  In fact,

15 I've read them more than once and read them again today.

16   It appears to me that the defendant made, I guess,

17 one factual objection to the report that I think is resolved

18 and then one guideline enhancement objection to the report that

19 we'll also discuss, and the Government has made no objections

20 to the presentence investigation report.  I have read all of

21 that.

22   So is it accurate for the Government that you have no

23 objections to the presentence investigation report?

24   MR. MOORE:  That's accurate, Your Honor.

25   THE COURT:  Mr. Bardos, as to your client, as I

understand it, factually the defendant initially objected to
the draft PSR, not including additional facts that were
supplied by the defendant during and after his presentencing
interview but that the final PSR has included those additional
facts, so it seems to me that factual objection may be
resolved.  Is that accurate?

MR. BARDOS:  It's resolved in part, Your Honor.  The
author of the report put those facts in the section under
acceptance of responsibility.  I think they belong in the
factual part.  I think they are part of the facts of the case,
just like the statement of facts from the plea agreement.  I
don't think they address acceptance of responsibility.  First
of all, they didn't come from my client necessarily; they came
from me.  And, secondly, they are intended to give a fuller
picture of the facts of the case beyond simply what was in the
agreed statement of facts.  It's really sort of a technical
point.

THE COURT:  I don't know if it's such a technical
point because from my standpoint, I was curious as to whether
Mr. Piccirilli is actually accepting responsibility, given some
of the language he sought -- you sought on his behalf to be
included in the presentence investigation report.

MR. BARDOS:  I can clarify that, Your Honor.

THE COURT:  Please do.

MR. BARDOS:  There's no question that Mr. Piccirilli

accepts responsibility for the offense to which he pled guilty. There is no question that he accepts responsibility for owning -- for having in his possession the weapons that were found at the time of the search in December of 2018. Where we disagree is whether the possession of those weapons qualifies for the enhancement, the four-level enhancement.

As to the four-level enhancement and the original charge in the indictment, which was under 18 USC 922(o) which requires a knowing and unlawful possession of weapons, that he does dispute because our position is that those weapons were not held in violation of the statute or in violation of the guideline.

So as to the crime, 26 USC 5861(d) to which the Court referred, he accepts responsibility fully for that. The dispute seems to come with regard to other things that were not necessarily part of that original plea.

THE COURT:  Okay, and I understand that.  Thank you. We'll address that argument as to your objection to the enhancement here in a little bit.

MR. BARDOS:  Thank you.

THE COURT:  Mr. Moore, do you have any position on behalf of the Government as to whether that additional information that was provided by Mr. Piccirilli should go in the offense section or in the acceptance of responsibility section of the pretrial sentencing report?

1          MR. MOORE:  I do, Your Honor, and I actually think

2     that your observations are spot on.  I think the facts in the

3     factual section are the ones that the parties agreed upon and

4     the ones that he agreed to at the plea hearing.  Those are the

5     ones that are contained as part of the facts germane to the

6     offense.

7          I have two responses specifically to what Mr. Bardos

8     said.  Obviously, the Government's first position is that some

9     of these facts that he is presenting are irrelevant to the law

10    applicable to the offenses as well as other offenses that

11    Mr. Bardos raises in his sentencing memo.

12         The second thing is, as you said, I think some of

13    these actually hit to the heart of whether he is fully

14    accepting all of the conduct, all the criminal conduct that's

15    encompassed here because, again, our position is that all of it

16    is criminal, and all of these additional facts are just ways to

17    sort of undermine that instead of actually accepting full

18    responsibility for that.

19         I agree with where they are.  I would object to them

20    being placed into the actual facts.  I think if those are

21    things that he wants to rely on, he's certainly capable of

22    doing that, but it's inappropriate to place it in that section

23    of the presentence report.

24         THE COURT:  All right, thank you.  The Court finds

25    that the additional facts supplied by the defendant during and

1    after his presentencing interview, which were included by the

2    probation officer in the presentence investigation report, are

3    appropriately included in the outside of the offense conduct

4    but in the acceptance of responsibility section so that the

5    Court can fully take everything into consideration.  And the

6    probation officer did, in fact, add the material that the

7    defendant requested into the presentence investigation report

8    so that the Court has it before me today to consider.

9          Additionally, the Court finds sufficient indicia of

10   reliability to support the probable accuracy of the information

11   contained in the presentence investigation report.

12   Accordingly, the Court adopts the presentence investigation

13   report and as to all factual matters in the presentence report,

14   the Court adopts them as findings of fact.

15         Now as I understand it, just to clarify, Mr. Bardos,

16   the only remaining objection then is defendant's December 26,

17   2019, objection to the four-level guideline enhancement

18   pursuant to 2K2.1(b)(1)(B).  It was the Court's understanding

19   initially that the defendant was not objecting to the

20   enhancement at that time but was instead providing information

21   it hoped would help convince the probation officer and the

22   Court the enhancement did not apply.  However, because the

23   enhancement is included in the presentence investigation

24   report, the Court does note defendant's legal argument in his

25   sentencing memoranda that the enhancement should not apply and

1    the Government's arguments in response.

2            So you do maintain an objection to that enhancement;

3    is that correct, Mr. Bardos?

4            MR. BARDOS:  Yes, Your Honor.  I believe at the end

5    of the final presentence report, it says that the ultimate

6    decision on that enhancement will be left to the judge.

7            THE COURT:  Correct.  Thank you.

8            MR. BARDOS:  Your Honor, can I ask for one

9    clarification?

10           THE COURT:  Yes.

11           MR. BARDOS:  So the Court adopted all factual matters

12   in the presentence report.  Does that include information that

13   we were just discussing that was put in the acceptance of

14   responsibility because that's a series of facts?  Or are you

15   not adopting those as well?

16           THE COURT:  Yes, I'm adopting those as well.

17           MR. BARDOS:  Thank you.

18           THE COURT:  And will consider them when we get to the

19   acceptance of responsibility deduction or not.

20           MR. BARDOS:  Thank you, Your Honor.

21           THE COURT:  Thanks.  At the November 4, 2019, plea

22   hearing, the Court deferred acceptance of final judgment on the

23   plea agreement until sentencing.  At this time the Court

24   accepts the plea agreement on the grounds that the defendant's

25   plea adequately reflects the seriousness of the actual offense,

1    behavior and that accepting the agreement will not undermine

2    the statutory purposes of sentencing or the United States

3    Sentencing Guidelines.  The Court's judgment and sentence will

4    be consistent with the plea agreement.  Particularly, the Court

5    recognizes the plea was agreed upon pursuant to Federal Rule of

6    Criminal Procedure 11(c)(1)(C), and the Court is therefore

7    bound by the parties' agreement to impose a sentence of no more

8    than 36 months of imprisonment.

9              With respect to the statutory penalties,

10   Mr. Piccirilli stands convicted of possession of an

11   unregistered firearm in violation of 26 USC, Section 5861(d).

12   Federal law provides the following maximum penalties for

13   violating this statute: a term of imprisonment of not more than

14   10 years, a period of supervised release of not more than

15   3 years, a fine of not more than $10,000, and a special

16   assessment of $100.

17             Has the special assessment been paid yet?

18             MR. BARDOS:  No, Your Honor.

19             THE COURT:  The United States Sentencing Guidelines

20   are, of course, advisory and are not binding on this Court.

21   This Court may not presume that the guidelines range is

22   reasonable.  Rather, the Court is required to calculate and

23   consider the applicable sentencing guideline range and also

24   consider the sentencing factors enumerated in 18 United States

25   Code, Section 3553(a).  So I will begin by calculating the

1    advisory guidelines range.

2           Before I do that, the Court will address the

3    parties' arguments regarding that application of a four-level

4    enhancement based on the specific offense characteristic of the

5    number of firearms involved in the offense.  U.S. Sentencing

6    Guidelines, Section 2K2.1(b)(1)(B), increases the base offense

7    level by four when the offense involved between 8 and 24

8    firearms.  Application note 5 specifies that the guideline

9    applies to only those firearms that were unlawfully sought to

10   be obtained, unlawfully possessed or unlawfully distributed.

11   The presentence investigation report and the Government agreed

12   the sentencing enhancement applied.

13          Based on the submitted pleadings and support of their

14   respective positions of both parties, the Court understands the

15   Government's position to be that 19 firearms were involved in

16   this offense because they were unlawfully possessed by

17   Mr. Piccirilli.  The Court understands Mr. Piccirilli's

18   position to be that the firearms were not unlawfully possessed

19   because Mr. Piccirilli did not know he was not permitted to

20   possess them and did not plead guilty to these firearms.  The

21   Court further understands that the Government's position is

22   that the guidelines do not include a knowledge element because

23   26 USC, Section 5861(d), does not include a knowledge

24   requirement.

25          I will permit counsel each to make further arguments

in support of your positions if you desire.  Mr. Bardos, I'll
call on you first since it's your objection.

          MR. BARDOS:  Thank you, Your Honor.  It's an
interesting shift that's gone on in this case because the plea
agreement says that -- under paragraph 6B, the office, United
States Attorney's Office under United States Sentencing
Guideline 1B1.2(c), not 1.3 but 1B1.2(c), that the guidelines
level should be calculated as if the defendant pled guilty to
possessing all of the firearms admitted to in the statement of
facts set forth in Attachment A, and the offenses should be
grouped together.

          So what that is referring to, in our opinion, Your
Honor, is the indictment, the charge in the indictment as if he
had pled guilty to that charge.  That charge under Count 2, 3
and 4, and I'm going to focus on Count 2, is that he under --
in violation of 18 USC 922(o), that he knowingly possessed the
firearms in violation of Title 18.  So what the plea agreement
is saying is that the Government is asking the Court to
consider as if Mr. Piccirilli, in addition to pleading to the
Tax Code violation under 26 USC 5861, that you should consider
that he also is pleading guilty to Count 2, knowingly
possessing all of these weapons in violation of Title 18.

          It is that where the -- that is the point where the
parties disagree because our position is not only did he not
plead guilty to Count 2, we would have not pled guilty to Count

1  2 because there is a defense to Count 2, and that defense is

2  very simple.  That is that at the time prior to the search of

3  his residence in December of 2018, his sister's house,

4  Mr. Piccirilli was under a federal firearms license and, in

5  fact, in December was still, as far as he knew, under that

6  federal firearms license.  So that information was transmitted

7  to the Government by us.  I don't know that they even knew what

8  Mr. Piccirilli's status was as far as he knew in December.

9         Because what happens is he is under a federal

10  firearms license for FJB Engineering -- I think we put all

11  this -- I'm just going to summarize, Your Honor.  Unbeknownst

12  to Mr. Piccirilli, on October 11 of 2018, Mr. Bloom, the owner

13  of the company, writes to the ATF and says, "He's no longer

14  under our license."

15         Mr. Bloom doesn't tell Mr. Piccirilli this, doesn't

16  say anything to him.  In fact, what happens is an employee, an

17  administrative assistant at FJB is telling Jim, "You are still

18  under the FFL," as late as November 2018.

19         So the question then becomes when he had these

20  weapons while he worked at FJB before the October 11 letter,

21  was his possession of these items legal?  And our position is

22  it was because that's what his job was.  His job was to work

23  for FJB, create, design, manufacture weapons, and then take

24  them to places so that --

25         THE COURT:  So wouldn't you be arguing that the count

1    to which he pled guilty was also legal?

2              MR. BARDOS:  No, Your Honor, because -- first of all,

3    he has these items as part of his job for FJB Engineering.  His

4    actions with regard to Mr. McKenna, when he gave this gun to

5    Mr. McKenna, who is a licensed gun dealer to sell, were outside

6    of the realm of his activities for FJB Engineering.  By the

7    time we got to December and he is on the phone trying to

8    transfer one of these weapons, there's no -- that all by itself

9    is the problem, that he cannot do and we've never contested

10   that.

11             The possession of them, however, is a holdover, a

12   continuation from his activities and his legal activities for

13   FJB Engineering.  So my point then, Your Honor, is that at the

14   time -- if I could just step to the podium for a minute, Your

15   Honor?

16             THE COURT:  Sure.

17             MR. BARDOS:  This is one of the things I submitted as

18   an exhibit.

19             THE COURT:  You mean you submitted as part of your

20   sentencing memoranda?

21             MR. BARDOS:  Yes, ma'am.  This is June 2018, it's

22   from FJB Engineering, and these are a series of weapons that

23   Mr. Piccirilli took to the Machine Gun Nest in June of 2018 as

24   part of his job at FJB Engineering, to have people try them

25   out, to see if people wanted to buy them as sales demos.

1  That's what he was doing.  He kept these weapons because he was

2  taking them around to places.  Then he had them in his house

3  and car in December when his place was searched.

4      My position is if, in fact, it's legal for him to

5  have them in June of 2018 because he was under the federal

6  firearms license, then it was legal for him to have it in

7  December of 2018 as far as he knew because he was still, to his

8  knowledge, under the same federal firearms license.  And the

9  fact that Mr. Bloom had not taken him off of that license led

10 Mr. Piccirilli to believe --

11     THE COURT:  Would you mind putting that up there

12 again, please, so I can look at it.

13     MR. BARDOS:  Certainly, Your Honor.

14     THE COURT:  You can continue your argument.

15     MR. BARDOS:  The fact that as far as Mr. Piccirilli

16 was informed, Mr. Bloom had not taken him off of the federal

17 firearms license meant that, to him, Bloom was still interested

18 in having Jim sell -- using these things as sales demos to try

19 and make money for FJB Engineering.  So my position is, Your

20 Honor, if in fact -- and I think it is correct -- that he was

21 allowed by the ATF regulations to have these guns in June, then

22 he was in exactly the same situation in December.

23     The only difference is that he was no longer actively

24 employed by FJB Engineering, but he still had the prototypes,

25 he still had the weapons, he still was trying to sell them on

1  behalf of FJB Engineering.  So that is our position.

2          The other thing, Your Honor, so the shift here is

3  Count 2 is a violation of 18 USC 922(o).  922(o), under the

4  criminal statute, requires a knowing violation of the statute.

5  Our position is that he did not know he was in violation of

6  that statute.

7          We then shift now to this guideline and instead of

8  saying that it was unlawful for him to have these under 922(o),

9  the Government now says -- different than what was in the

10  indictment, different than what was at the plea.  The

11  Government now says, wait a minute, those guns were not

12  registered and, therefore, they're unlawful because under 826

13  USC 5861, there's no scienter requirement; it's a strict

14  liability offense.  That is much different than where we were

15  when we entered the plea and much different than what the

16  indictment says.

17          I would suggest that for an enhancement of four

18  levels which takes the bottom of these guidelines from 18

19  months to 30 months, so it adds a year to the guidelines -- I

20  understand they're not mandatory but still.  Before a Court can

21  do that, there has to be a finding that Mr. Piccirilli had some

22  knowledge of -- that what he was doing was illegal, some

23  knowledge.  That's what the *Corso* case says.  The *Corso* case

24  says we refer back to the statute.  It is true that if you were

25  only referring to 5861, there's no scienter requirement.  But

1   the Government is talking about Count 2.  They're talking about
2   all the other guns that were there that they allege were there
3   illegally under the criminal statute.

4          Our suggestion is that a four-level enhancement
5   should only apply if there is some level of intent similar to
6   what the criminal statute says.  That is as close as I can get
7   under *Corso* because it doesn't address this directly.  I
8   couldn't find anything else that talked about this particular
9   enhancement.

10         So I think that before the Court says I'm going to go
11  from 18 months to 30 months, I would ask the Court to look at
12  the circumstances under which he had these weapons, and that at
13  the time they were not registered, but he was not the person
14  who could register them.  They weren't registered in June of
15  2018 either.  The only person on the planet who could register
16  them was his employer, and if he didn't do it, he didn't do it.
17  If, in fact, these are FJB Engineering weapons and they're not
18  registered and that's a violation of the law, then FJB
19  Engineering was in violation of the law as well.  And I don't
20  think that's the state of the law.  I think that there's a
21  manufacturer here and the law is designed to allow them to go
22  out and use these as demos.  And they are required to be
23  registered, but it wasn't Mr. Piccirilli's -- he couldn't
24  register them even if he wanted to, and if everything he had
25  had to be registered, he couldn't have done any of what his job

1    was.

2            So he was doing his job, he was no longer doing it

3    actively for FJB Engineering, but he was still involved in

4    using these as sales demos, and therefore we don't believe his

5    possession was unlawful under the guideline.

6            THE COURT:  Okay.  Thank you.  Mr. Moore?

7            MR. MOORE:  Thank you, Your Honor.  My two broader

8    points is that all of these facts you see here, the receipts,

9    the factual proffer from the defendant, we don't agree with all

10   of them, but I'll get into that later when it's more

11   appropriate.  These are all smoke screens because the reality

12   is possession of these firearms in any capacity for any reason

13   is simply unlawful, from the get-go, from the jump.

14           I will meet Mr. Bardos and the defense where they

15   are.  Let's say we're in the realm of the applicable offense is

16   the 922(o), the possession of the firearm or of the machine gun

17   under Title 18.  Take a look at the elements --

18           THE COURT:  But the Government is not agreeing, are

19   you, that this is akin to him pleading guilty to a 922(g) as

20   opposed to this being part of the relevant conduct of 5861?

21           MR. MOORE:  There's actually two separate questions

22   there if you break it down.  I think the sense of pleading

23   guilty to the facts does literally plead you guilty to the

24   offenses which you're charged in the indictment, so in that

25   sense it's Title 18 922(o).  But if you look at the actual

1  language of 2K2.1(b)(1), it just says unlawfully possessed.  It

2  doesn't say unlawfully possessed under the language of the

3  statute.

4       Now if you look at *Corso*, *Corso*, of course, takes an

5  NFA offense and sort of applies that to the relevant conduct

6  that's there.  So you would likely do the same thing here but

7  that's just that case.  The guidelines don't actually require

8  you to graft the language from the indictment.  Here the

9  guidelines just require you to find an applicable statute, and

10  if it's unlawful in that way, then that's the one you apply.

11  For instance, you could end up in a situation like this to

12  where one person could argue it's unlawful in one way and

13  that's certainly relevant conduct you should be held

14  responsible for, but then you can just throw in all these other

15  statutes in which it's not unlawful -- or which it is, in fact,

16  lawful but you could argue that it's lawful, and you create

17  sort of these side bar arguments.

18       The other thing that kind of struck a little bit, the

19  plea agreement negotiation process to where we're trying to

20  boil this down and then it's starting to get back into

21  reopening and relitigating the other counts that we're about to

22  dismiss.  So I think that under the guidelines, if we can show

23  that -- if we can pick an applicable statute and show how

24  possession is unlawful under that, that meets the language of

25  2K2.1(b)(1).

1    I will say that even if you do decide that 922(o) is

2    the one that applies, it's just the legal framework just isn't

3    there for the defense to argue what they're arguing.  The

4    elements of possessing a machine gun, I think there's four --

5    the possession, the knowing possession, it has to be a machine

6    gun.  What I think that *Rehaif* does, and other cases too, is

7    sort of extend this knowing requirement to -- you at least are

8    substantially aware that the machine gun you're holding is, in

9    fact, a machine gun.  All these facts lead up to that.  There

10   is no element requiring him to also know that he isn't supposed

11   to be possessing it in the first place because this actually

12   equates to a mistake in the law.  This is like I have to also

13   know that there is a statute prohibiting my possession.  I

14   actually would submit it's actually more disadvantageous to

15   argue under 922(o) than just under the NFA.

16   If we can skip back to the NFA, I think the law is

17   very clear and I think the defense agrees actually in their

18   second sentencing memorandum that the relevant element here is

19   the registration of the firearms.  They're not registered, he

20   admits that they're not registered.  At least in terms of

21   Count 1, that's not registered to him and for all of the

22   remaining firearms, he admits that they're not registered to,

23   quite frankly, anybody.  The bottom line is if you're a

24   manufacturer, you are required under the relevant statute and

25   ATF regulations to register that firearm within one business

1 day. Any successive possessor is not allowed to possess that
2 firearm whatsoever.

3      I tried to make this clear in the briefing because we
4 have all this talk of, "Well, I'm under an FFL. I'm supposed
5 to be manufacturing all these things, I'm supposed to be taking
6 these home and demonstrating them as sales samples." You can
7 do that if the firearms are registered. These aren't. So a
8 lot of these things are a little bit of smoke screen here.

9      The final point that I want to make is just very
10 simply with regard to the receipt that's shown because this is
11 something indicative that I'm going to point back to later when
12 we get to 3553(a) in that he's actually admitted to every
13 relevant fact to establish unlawful behavior under whichever
14 statute you want to apply, the 922(o) -- although here we would
15 ask you and, quite frankly, it's harder for us to prove under
16 the NFA, but what he does instead is he submits all of these
17 facts to sort of draw attention away. We see this receipt. We
18 see that the receipt is dated June of 2018. We see no receipts
19 from this time where he's no longer employed. We don't know
20 what the serial numbers are on these guns. What we don't see
21 is permission to hold the guns in the indictment at home from
22 the FFL. There's nothing showing that any of these firearms
23 are registered to him.

24      So our position is still that all of these are
25 unlawfully possessed because none of these are registered to

1   Mr. Piccirilli and at least the firearm in Count 1 -- he admits
2   is not registered to him --
3           THE COURT:  That's the only count he pled guilty
4   to.
5           MR. MOORE:  That is the only one but these are all
6   relevant, right?  So --
7           THE COURT:  Right, which is where I was starting in
8   the first place.  It's my understanding that the Government's
9   argument is he only pled guilty to the single count and that
10  all of these other 18, I guess, firearms come into play as
11  relevant conduct and for grouping purposes for that enhancement
12  to apply and that's what's set forth in paragraph 6 of the plea
13  agreement.
14          MR. MOORE:  Yes.
15          THE COURT:  Is that accurate?
16          MR. MOORE:  That's correct.
17          THE COURT:  Okay.
18          MR. MOORE:  Yes, so the analysis there is that
19  firearm offenses generally, plural, they group so that's how
20  that comes in.  It doesn't have to be specific to this statute
21  or that statute.  The guidelines say firearms offenses group
22  because we look at the sum of the harm as it builds up.  So
23  that's how that comes back in.  Again, when you look at the
24  cases, *Pineda* and *Hodge*, that talk about the other relevant
25  factors we look at to see if those come in as relevant, they're

not talking about statute-specific stuff.  They're talking
about the actual conduct that's going on.  Again, I think this
represents not -- I think this represents holding defendants
accountable not just to what they plead guilty to but the
actual wrong that occurs.  Again, nowhere in 2K2(b)(1) does it
say that these have to be tied specifically to specific
statutes.

THE COURT:  Okay.  Would you like to respond to
Mr. Bardos's argument that the Government, that things sort of
shifted here from always pleading guilty to just this one count
to now he's pleading guilty to all these other counts?

MR. MOORE:  I don't think there's a shift at all.  I
think the plea agreement makes it quite clear that this is
going to be a dispute.  He, in fact, admits to unlawful conduct
in all of these counts.  He could have certainly negotiated to
put in all these other facts; he didn't.  It's a negotiation.
It's a mutual process.

The second thing is from the very beginning, the
sentencing guidelines make it known that all relevant conduct
is on the table.  All four -- all of these firearms are
included in the indictment.  There are four different counts
there alleging four separate possessions of unlawful firearms.
This isn't a bait and switch.  This is an intention from the
very beginning to hold him accountable to that.  He obviously
has the right to dispute that, but he's been on notice of this

1  the entire time.  I don't think this is a shifting of the

2  balance.

3          THE COURT:  All right.  Anything else, Mr. Moore?

4          MR. MOORE:  Court's indulgence.  Nothing further,

5  Your Honor.

6          THE COURT:  Thank you.  Mr. Bardos, do you have

7  anything in response to that argument?

8          MR. BARDOS:  Your Honor, I understand what Mr. Moore

9  is saying and, as usual, he is articulate and convincing.  I

10  don't disagree that the weapons that were found at the house

11  were not registered.  My point is this.  A violation of the Tax

12  Code under 28 USC 5861 is a criminal statute that is highly

13  unusual because it is a strict liability offense.  You don't

14  have to know one way or the other -- you are required to only

15  possess something if it's registered, and even if you think it

16  is, that's not a defense to that.

17          Strict liability offenses are very rare in criminal

18  cases, so my position is if you're going to look at the

19  sentencing guidelines which generally cover, for the most part,

20  criminal offenses under Title 18, that in order to jump from a

21  low of 18 months to a low of 30 months, there should be more

22  than just holding a defendant to strict liability under the

23  guidelines.  That's my position.

24          If the Court finds that 5861(d) is the relevant

25  statute with regard to this enhancement, then I think the

1   enhancement applies.

2           THE COURT:  That's because it's a strict liability

3   statute.  Is that --

4           MR. BARDOS:  That's correct, Your Honor.

5           THE COURT:  -- your understanding?  Is there anything

6   else from Mr. Bardos or Mr. Moore?

7           MR. BARDOS:  No.  Thank you, Your Honor.

8           THE COURT:  Okay, thank you.

9           All right.  With regard to the objection over the

10  four-level enhancement pursuant to United States Sentencing

11  Guideline 2K2.1(b)(1)(B), the Court finds the four-level

12  increase for the specified offense characteristic does apply in

13  this case.  Specifically, the Court makes the following

14  findings of fact and conclusions of law.

15          The original indictment in this case dated

16  February 7, 2019, identifies 19 firearms and sound suppressors

17  that fall within the National Firearms Act because they're

18  described in 26 United States Code, Section 5845(a), and

19  pursuant to *Staples v. United States*, 511 U.S. 600 (1994), that

20  elements of possession of an unregistered firearm are that the

21  defendant, one, knowingly possessed a firearm; two, that was

22  not registered to him; three, knew the firearm had the

23  characteristics that make it unlawful pursuant to 26 USC,

24  Section 5845(a).  The defendant need not know that the firearm

25  is unregistered.

1       Mr. Piccirilli has pled guilty to possession of the

2   firearm listed in Count 1 of the original indictment.  In the

3   stipulation of facts at pages 10 to 12 of Mr. Piccirilli's plea

4   agreement, he admits specifically at the top of page 12 to

5   knowingly possessing the 18 -- other 18 firearms listed in the

6   counts.  In Counts 2 through 4 of the original indictment, he

7   further admits that he knew the firearms had the

8   characteristics that make them unlawful pursuant to the

9   National Firearms Act and that none of the firearms was

10  registered to him or any other person.

11      Mr. Piccirilli could not have possessed the firearms

12  lawfully for purposes of his employment as none of them were

13  registered to him or to any other person, pursuant to 27 CFR,

14  Section 479.103.  In the ATF Handbook, firearm manufacturers

15  are required to register their firearms by the close of

16  business on the next business day after the firearms are

17  manufactured.  Again, Mr. Piccirilli has admitted in the

18  stipulation of facts, page 12 of the plea agreement, that the

19  firearms were not registered to any person.

20      Pursuant to United States Sentencing Guidelines,

21  Section 1B1.2(c), a plea agreement containing a stipulation

22  that specifically establishes the commission of additional

23  offenses shall be treated as if the defendant had been

24  convicted of additional counts charging those offenses.  Thus,

25  because Mr. Piccirilli admitted all of the elements of

possession of an unregistered firearm in violation of 26 USC,

Section 5861(d), with respect to all 19 firearms, he is

considered to have pled guilty to 19 counts of violating 26

USC, Section 5861(d), for purposes of guideline section

1B1.2(c).

All 19 counts of violating 26 USC, Section 5861(d),

not Section 922, again, these are treated as counts only for

sentencing purposes pursuant to the guidelines.  These group

together pursuant to United States Sentencing Guidelines,

Section 3D1.2, because they are sufficiently connected or

related to warrant the conclusion that they are part of a

single episode spree or ongoing series of offenses.

Mr. Piccirilli possessed all the firearms in close time and

space proximity, and his arrest for the firearm identified in

Count 1 of the indictment led to the search where the other 18

firearms were discovered.

Because all 19 firearms were involved in the offense

and Mr. Piccirilli admits to unlawfully possessing them in

violation of 26 USC, Section 5861(d), U.S. Sentencing

Guidelines, Section 2K2.1(b)(1)(B), will apply to increase the

base offense level by four.

Mr. Moore, is there anything the Government would

like to say concerning my findings and conclusions with regard

to that enhancement?

MR. MOORE:  No, Your Honor.

1    THE COURT:  Mr. Bardos, is there anything you would
2  like to say?

3    MR. BARDOS:  No.  Thank you, Your Honor.

4    THE COURT:  Of course, your objection is noted.

5    So as to the total offense level, starting with the
6  base offense level, the Court finds that the presentence
7  investigation report correctly calculates the total offense
8  level, the criminal history and the guideline ranges,
9  specifically the relevant United States Sentencing Guideline
10 for a violation of 26 USC, Section 5861(d), is found in United
11 States Sentencing Guidelines, Section 2K2.1(a).

12    The base offense level for a violation of the statute
13 for which Mr. Piccirilli is convicted is level 18 because the
14 offense involved a firearm described in 26 USC, Section
15 5845(a).  The specific offense characteristics of the offense
16 include the total number of firearms involved in the offense,
17 that is, 19, which ranges the offense level by four levels.  So
18 18 plus 4 accordingly raises the offense level to a 22.

19    Now with regard to acceptance of responsibility
20 pursuant to United States Sentencing Guidelines, Section
21 3E1.1(a), the presentence report does provide for a two-level
22 decrease for acceptance of responsibility.  However, I'd
23 actually like to hear from the parties as to whether that
24 two-level acceptance of responsibility reduction should be
25 applicable given the concerns raised earlier as to whether or

not Mr. Piccirilli is actually accepting responsibility for the crime with which he is convicted, considering the additional factual material which is now included under acceptance of responsibility but is adopted as findings of fact.  It sounds like he might not be accepting responsibility.

Would you like to make argument on that, Mr. Bardos?

MR. BARDOS:  Yes, Your Honor.  I'm not entirely sure the source of the Court's concern, but I can relieve you of that.  Mr. Piccirilli understands fully that at the time that he was -- that he had this weapon, it was not registered.  It was not registered to him, it was not registered at all, and that under the strict liability of the tax code, he is responsible for that.  He has never challenged that.  I didn't challenge that in my objections, and we haven't challenged it today.  He fully accepts that and understands that.  He doesn't like it, but he understands that.

The difficulty, what we've raised -- it goes in part to the guidelines and I'm not going to redo that argument, but it also goes to 3553(a).  In other words, when I first got this case and I would talk to people about it, and I'd say I had a client who was found with ten machine guns in his house and everybody has the same response, "Oh, my God."  It's a bad case if that's what's going on.  It's a different case if he had a job and he was under a federal firearms license, and he was allowed to have them in other respects other than the

1  registration.

2          What I've submitted is in part with regard to the

3  guideline itself but really more to give the Court some basis

4  for understanding how this man, who has never been in trouble

5  in his life, ends up before Your Honor with these 19 weapons

6  that are unregistered.  That's really -- so it was really more

7  a context to explain how we got to where we were, not in any

8  way to contest the fact that what he did was illegal.

9          THE COURT:  Thank you.  I appreciate that

10  clarification, Mr. Bardos.

11          Does the Government have anything it would like to

12  say in response with regard to acceptance of responsibility,

13  with regard to the two-level decrease first?

14          MR. MOORE:  Yes.  I say that I make these comments

15  very carefully because it is certainly a defendant's right to

16  contest the Government's evidence.  It's certainly the

17  defendant's right to put on his view of what happened and to

18  sort of prove or show what the appropriate level, amount of

19  response is from the criminal justice system in terms of the

20  conduct that actually happened.  So I'll try to stick as much

21  as possible to the bare-bone facts of what's going on here.

22          I'll note by pointing out that Mr. Piccirilli

23  obviously is very accepting of responsibility in terms of the

24  legal basis for his conviction under Count 1.  The firearm not

25  being registered to him, that it is an NFA firearm, he's not

supposed to have it.  I note, so the record is clear, the

commentary to 3E1.1 which is the acceptance of responsibility

guideline under the guidelines, it tells us that acceptance of

responsibility isn't just truthfully admitting to the conduct

comprising the offenses of conviction, and it also involves the

truthful admitting or not falsely denying any additional

relevant conduct for which the defendant is accountable, the

relevant conduct.

Here's where it gets iffy.  The Government obviously

does not agree with Mr. Piccirilli's view of the facts.  In

fact, we've asked and I don't think any evidence has been

proffered to actually sufficiently sustain Mr. Piccirilli's

view of the facts.  I think you've gotten a lot of papers but

nothing actually proving what he's saying and disproving what

we're saying.  In fact, as I said in the sentencing memorandum,

it just doesn't make sense.  I say that only to mention those

things, but I leave that up to you, Your Honor.  Again, it's

firmly the Government's position that he does at least have the

right to challenge what our view of the facts are and to

present his own view of the facts.

THE COURT:  All right.  Anything else, Mr. Bardos, on

that?

MR. BARDOS:  Your Honor, I hope the Court understands

because I'm doing my best to try to explain it, there was a

plea discussion here.  As the Court may recall, initially there

1   was a discussion about pleading to the attempted transfer of

2   this --

3           THE COURT:  I recall.

4           MR. BARDOS:  So Mr. Piccirilli was agreeing that that

5   was improper as well.  The Court advised counsel, and we thank

6   you for that, that there was no violation of the tax code for

7   that.  So there's been no question that Mr. Piccirilli has

8   admitted his responsibility and his liability here.  Where we

9   disagree, and I do have a witness here who will present what

10  Mr. Moore refers to as evidence with regard to Mr. Piccirilli's

11  understanding of his status in the fall of 2018 --

12          THE COURT:  I assume that's one of your character

13  witnesses?

14          MR. BARDOS:  Yes, ma'am.

15          THE COURT:  Okay.

16          MR. BARDOS:  Where we disagree is the facts as it

17  relates to the other charges in the indictment.  I think we are

18  entitled to say we pled to this, and we accept this and we are

19  wrong for this; we didn't do that other stuff, we don't think

20  that's a violation of the law.  I wrote it down.  What the

21  Court found today is 19 counts for sentencing purposes of 26

22  USC 5861(d).  And I think I've already admitted that.

23          THE COURT:  You did.

24          MR. BARDOS:  We don't contest that, Your Honor.  But

25  there is an argument from Mr. Piccirilli's point of view of

1    whether he was in knowing violation of Title 18 because I think

2    that does make a difference.  I think you'll hear that there's

3    a big difference between a person who happens to have a bunch

4    of machine guns in his house and a person who's worked with

5    guns and designed guns and worked with law enforcement for 15

6    years.  Those are just different things.

7              Would a jury find that he was in knowing violation of

8    Title 18?  Perhaps.  But I think we are entitled to say we have

9    facts that suggest otherwise without losing the two levels for

10   acceptance of responsibility on this count.  Thank you,

11   Judge.

12             THE COURT:  Thank you, I appreciate that.  The Court

13   finds that pursuant to United States Sentencing Guidelines,

14   Section 3E1.1(a), which provides for a two-level decrease for

15   acceptance of responsibility, the Court finds that the

16   defendant has accepted responsibility for the offense by

17   pleading guilty before trial and by truthfully admitting the

18   conduct comprising the offense as Mr. Bardos has pointed out.

19   Mr. Piccirilli has admitted all of the elements of the offense

20   of conviction, 5861(d).  And as both the Government, rightfully

21   so, and Mr. Bardos point out, Mr. Piccirilli has the right to

22   contest the evidence otherwise and to put this in context for

23   the Court for sentencing purposes, as well as part of the

24   consideration or your argument at least for that, the prior

25   four-level enhancement for the 19 firearms.

1       So the two-level enhancement -- not enhancement, I'm

2  sorry -- deduction will apply.  So that brings the offense

3  level down to a 20.

4       All right.  Section 3E1.1(b) provides for an

5  additional one-level decrease if the offense level prior to the

6  adjustment -- of the offense level prior to the adjustment for

7  acceptance of responsibility was 16 or greater, and the

8  defendant assisted authorities in the investigation or

9  prosecution of his own misconduct by timely notifying the

10  authorities of his intention to enter a plea of guilty.  The

11  guidelines require that the Government must make a motion for

12  this one-level decrease.

13       Does the Government make that motion?

14       MR. MOORE:  Yes, Your Honor.

15       THE COURT:  All right.  The third-point reduction for

16  acceptance of responsibility then decreases the offense level

17  to 19.  The Court finds that the total offense level is 19.

18  The Court further finds that Mr. Piccirilli has a total of zero

19  criminal history points from any prior convictions.  According

20  to the sentencing table, zero criminal history points

21  establishes a Criminal History Category of I.

22       So the advisory sentencing guideline range, given a

23  total offense level of 19 and a Criminal History Category of I,

24  the advisory sentencing guideline range is as follows:  a term

25  of imprisonment of 30 to 37 months, a period of supervised

release of 1 to 3 years, a fine of 10,000 to $100,000, and a
special assessment of $100.  There is no mandatory minimum
sentence as to the count of conviction.

Also per the guideline sentencing table, a total
offense level of 19 falls in zone D which is ineligible for
probation pursuant to United States Sentencing Guidelines,
Section 5B1.1, comment note 2.

Also I note though the guidelines provide for a fine
of between 10,000 and $100,000, the statutory maximum fine for
a violation of 26 USC, Section 5861(d), is 10,000.

Mr. Moore, is there anything the Government would
like to add or say with regard to my calculations?

MR. MOORE:  Nothing further, Your Honor.

THE COURT:  Mr. Bardos, the same question, anything
you would like to say in regard to my calculations?

MR. BARDOS:  No, I think that's accurate, Your
Honor.

THE COURT:  I want to also make clear in terms of my
calculations in particular with regard to the four-level
sentencing enhancement for the 19 firearms, that 18 USC,
Section 922(o), doesn't factor into the decision-making process
there at all.

Section 3553(a) of Title 18 of the United States Code
provides several factors that the district court must consider
when determining the appropriate sentence.  Specifically, the

Court must consider the nature and circumstances of the
offense, the history and characteristics of the defendant, the
need for the sentence imposed to reflect the seriousness of the
offense, to promote respect for the law, and to provide just
punishment for the offense, to afford adequate deterrence to
criminal conduct, to protect the public from further crimes of
the defendant, and to consider the need for the sentence to
provide the defendant with needed educational or vocational
training, medical care or other corrective treatment in the
most effective manner.

The Court is also instructed by Section 3553(a) to
consider any pertinent policy statement issued by the
Sentencing Commission that is in effect on the date of
defendant's sentencing, the need to avoid unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct, and the need to provide
restitution to victims, if any, of the offense.

Section 3553(a) also instructs the Court to consider
the kinds of sentences available and the advisory sentencing
guideline range.  I've already calculated the applicable
guideline range and will take it, along with the 3553(a)
factors, into account when determining the appropriate sentence
in this case.  As I've noted, I've carefully reviewed all of
the pleadings filed on behalf of both the defendant and the
United States with regard to the sentencing today, but I will

1  permit counsel, each of you, to address any of the Section

2  3553(a) factors you deem relevant in the circumstances of this

3  case.

4          The Government, Mr. Moore?

5          MR. MOORE:  Thank you, Your Honor.  The Government is

6  recommending 36 months of imprisonment here for Mr. Piccirilli.

7  That's consistent with a few things.  It's, first of all,

8  consistent with the agreed-upon range in the plea agreement,

9  and it's also consistent with the top end of the guidelines.

10 I'd say that notwithstanding the guidelines, I think under

11 3553(a), this is just independently sufficient but not greater

12 than necessary, it's the appropriate sentence.

13          That's so for several different reasons.  The first

14 factor that we look at is the seriousness of the offense.  This

15 offense is serious in many ways.  I think the most obvious is

16 the type of firearms involved which the Supreme Court has said

17 several times that these are pretty much the highest, the more

18 highly dangerous firearms that can still be legally possessed

19 in the United States and that's because they are highly

20 dangerous in two ways.

21          The first is when you're dealing with a fully

22 automatic weapon or a machine gun, it can actually expel more

23 than one bullet with one pull of the trigger.  This means that

24 you can pull the trigger in many cases and expel as many

25 bullets until you run out.  I think in the Government's

sentencing memorandum, we try to do a good job of just
describing the sheer amount of harm that could do to the
public.

I've given numbers about the active shooting
incidents in the United States that happened over the most
recent available data that we have through the FBI, and one
shooter with a bump stock which is similar but not the same.
It's not the same because it's not a fully automatic firearm,
but it behaves largely in that way.  And how this one shooter
accounted for a very, very large percentage of people hurt or
killed in that few-year span in just 11 minutes.  Eleven
minutes.  That's not even a fully automatic firearm.  That's of
concern here.

Then you look at the number and the type.  We keep
saying 19 firearms, 19 firearms.  The Government says firearms
because statutorily that's how the definition goes down, but
some of these are, in fact, guns that we would think of --
machine guns, like I said, that are fully automatic.  Others
are just short-barreled rifles.  Both of those are dangerous.
The Supreme Court says that the short-barreled rifle is
dangerous because it's more accurate.  You're hitting these
targets.  These are military-style weapons that are just being
sold to an unknown person, that are being stored in someone's
house, being stored in someone's car.

THE COURT:  Were there also suppressors?

1   MR. MOORE:  I was just getting to that.  Then we're
2   getting into the silencers.  The silencers, as Mr. Piccirilli's
3   own sentencing memoranda underscore, is that these are to
4   silence these weapons, make them more dangerous in that way but
5   also to make them more accurate, to increase the accuracy when
6   you're shooting those things.  That compounds the concern here.
7   We're looking at the number, we're looking at the
8   type, we're looking at the variety, and then we're coming back
9   down to, well, we just don't know where they came from.
10  Mr. Piccirilli argues that the ones in the other counts,
11  Count 2, I believe, Count 3 and 4, are coming from his
12  employer.  Conveniently, what no one has said is where the
13  weapon from Count 1 is coming from.  The Government doesn't
14  know, and Mr. Piccirilli is silent on that.  We don't know.  We
15  don't know where those guns are coming from.
16  What we do know is he had them, and he wasn't
17  supposed to.  We do know that he's a lawful firearm owner.  We
18  do know that he's capable of converting regular firearms into
19  NFA ones, and as he's already admitted, he was specifically in
20  the practice of doing that.  So, of course, the most harmful
21  inference we have to draw is that he was not supposed to have
22  these things but was capable of making them himself, and these
23  places where he says he's getting them from are likely not the
24  places he's actually getting those from, particularly because
25  we actually have no idea where he got the one in Count 1.

The second thing that increases the seriousness of this offense is not just the type and number and variety of the firearms and where they were found.  It's also that this, as Mr. Bardos has said, is a tax code violation.  This is about the registration of firearms.  The ATF, the federal government, they depend on people being truthful on these forms.  They depend on being able to track where these firearms originate, whose hands they go into and what they are used for because if they're used for a dangerous purpose, we need to figure out who's responsible for that.  Not necessarily that we're going to hold the manufacturer accountable for it, but we need to see where down the line blame should start and then what we can do as a society to correct sort of the errors in that chain.

When you create a firearm as highly regulated as this and there is no paper trail for that whatsoever, that certainly increases the seriousness of that offense.  When you have 19 of those firearms, that certainly increases the seriousness of that offense.

I had mentioned before in passing, but I'll dive a little bit deeper into it now.  I said that a lot of these proffered facts don't make sense.  Mr. Piccirilli paints the transaction in Count 1, the attempted sale in October, as sort of like the sale that he tries to do in the right way.  He tries to do it very cleanly, tries to do it by the books, giving it to an FFL.  The FFL is the one who sets the

1  transaction and the price and all the things thereafter.  I can
2  certainly appreciate that point of view, but I disagree because
3  in a sense, that's describing an unlawful transaction from the
4  very beginning.

5         I find it hard to see how you can take an
6  unregistered firearm that comes out of thin air, give it to an
7  FFL and make it a lawful transaction when neither you or the
8  FFL can hold on to that thing.  I certainly take no calm in
9  that scenario that you then only contact the seller simply
10 because you confirm it with your FFL friend.  This is
11 laundering an unregistered firearm and then trying to make it
12 lawful.  That, again, is just dangerous in and of itself
13 because we have to assume sort of the worst possibility when
14 somebody tries to do that.

15        Again, it subverts the entire system that's in place
16 for us to track these things.  If something were to happen with
17 that, we would have no idea that that started with
18 Mr. Piccirilli.  In fact, we don't even know if that starts
19 with Mr. Piccirilli.  So it's perpetuating sort of this type of
20 behavior.

21        And then we have this story that he's lawfully able
22 to possess all of the remaining firearms under the FFL.  I'm
23 still waiting for documentary evidence of that because that's
24 certainly not our position, and it just makes no sense.  You're
25 engaging in the same sort of conduct, same sort of unregistered

1  type of firearm under a completely different auspice that you

2  had just done it back in October. You're now trying to tell us

3  that these aren't related at all? Other people are to blame

4  for both of these things? And that as similar as they are and

5  as numerous as they are, this is all a misunderstanding on my

6  part.

7      There's been much talk about the NFA being sort of

8  strict liability in terms of registration, and I think this is

9  why. Freed says that there are some public safety statutes

10 where it's okay to have a strict liability standard as to some

11 of the elements. This is one. These are so dangerous that we

12 don't want to give people that opportunity to say this is a

13 misunderstanding. We see that. The law here is complicated,

14 there are a lot of exceptions, a lot of reasons why people can

15 hold these. It's a nonstarter. This is the exact reason why,

16 this specific scenario.

17     This brings me into the history and characteristics

18 of the defendant. Normally here we are encountered with people

19 who are just prohibited generally from possessing firearms, and

20 we sort of harp on how their past tendencies sort of show us

21 why people shouldn't have firearms like this. I think

22 Mr. Piccirilli comes from an entirely different background.

23 That's a little bit of a blessing and curse. It's a blessing

24 because it sort of holds back on some of these really dangerous

25 ones. There's no violence in his past that I'm aware of that

1  we can then attribute perspective, sort of fearful actions on

2  his part.

3       But it's also a curse.  It's a curse because this is

4  someone who paints himself as a firearms expert who apparently

5  is in contract with the military, working with police

6  departments, all of these other FFLs, and yet he is

7  incapable -- if you see it his way -- completely incapable of

8  knowing even the bare-bone facts to whether I can even legally

9  possess these in the first place.  I don't think you can have

10  it both ways.  I don't think you can be so sophisticated in the

11  law and yet assert ignorance at the time where it's finally

12  coming to bear.  At the time when you have two completely

13  different incidents, guns from two completely different

14  sources, now it's time for ignorance.  I don't think that's the

15  way it works.

16       The second thing is that Mr. Piccirilli notes that

17  he's not the typical gun defendant.  That's absolutely true.

18  Our typical gun defendants are not capable of manufacturing in

19  private the type of firearms that Mr. Piccirilli is.  That's

20  concerning because if someone goes rogue, which the facts

21  certainly suggest that Mr. Piccirilli did, there's no way to

22  track that number of firearms that are getting put out into the

23  public.

24       The second thing is that we end up in the situation

25  where we are to where somebody is really well skilled with all

these regulations, with all these loopholes, and gets involved in transactions with other people, and is now relying on all of these different things without coming back home to the simple fact that he had these things and he wasn't supposed to; that he had these things and it's part of an entire string of conduct; that he had these things and here we are now.

I spoke briefly about deterrence. I think deterrence is important for Mr. Piccirilli. In fact, the Government's recommendation is important for Mr. Piccirilli because he knew. I completely understand that for a huge group of people in this country, the Second Amendment right to bear arms is incredibly important. It's the Second Amendment in the Constitution. I heartily understand that. People use firearms for a variety of different reasons. I was in a sentencing the other day where it's like in some communities, gun ownership is secret, but in some, it's very well public.

I understand from Mr. Piccirilli's background, it's probably more of the public. This was a large part of his life. This was his livelihood, it was his expertise. Already being prohibited from possessing these firearms did not stop this conduct, not once but twice. It did not stop this conduct in terms of even selling it to a person he had not met. The reality remains that he knew nothing about this person and that he was going to give them all the materials to convert it back to being a legal firearm and that while he's on that phone

call, he's going to talk about this gun but not talk about this gun, but that's okay because this is a legal transaction, which doesn't add up.

The second thing is we go back to the tax code. The purpose of that is so other law-abiding citizens know that you are supposed to maintain a paper trail from the day these things are manufactured, all the way through the current possessor, of where these things are coming from. Again, we're not talking about handguns. We're talking about some of the more highly regulated firearms that we have. We have to send a message to other people -- this is broader deterrence, not personal deterrence -- this type of conduct just simply isn't tolerated with weapons of these kind. It's just not.

So I think given the sum of those things, someone with this expertise, someone who engaged in these transactions, a lot of these things don't add up, the number or type of the firearms, the type of code involved, the number of people placed at risk. I'm coming up with it now, it's also a curse in another way in that Mr. Piccirilli was a police officer. It's respect for the law. It's undermining that. He knows that.

For all of these reasons, we think that 36 months is sufficient but not greater than necessary to meet the aims of 3553(a). Thank you, Your Honor.

THE COURT: All right. Thank you.

1    Mr. Bardos, I'll ask for your argument with respect

2    to the Section 3553(a) factors.  And as part of that, now is

3    the time if you'd like to put on your three character

4    witnesses, you may do that.  I caution that the three character

5    witnesses should not be cumulative, excessively cumulative of

6    one another.  So I'll hear your argument and your witnesses now

7    on that, and then I'll hear from Mr. Piccirilli if he chooses

8    to say anything at a later point.

9         MR. BARDOS:  Thank you, Your Honor.  Just as a form

10   of introduction, the Court determined the guideline range and

11   did so accurately, and it does fall within zone D.  I would

12   simply point out that particularly under the *Gall* case, the

13   guidelines aren't mandatory which the Court has already

14   identified.  In fact, oddly, in the *Gall* case, his guidelines

15   were 30 to 37 months, and the Supreme Court approved a

16   probation sentence for Mr. Gall.  You may think it's impossible

17   once you decide the sentence, but under the guidelines, it is

18   not impossible to give this man probation.  I would like to

19   present the reasons why we think that's an appropriate

20   sentence.

21        THE COURT:  I appreciate that and accept that and

22   understand that the guidelines are not -- are advisory only.

23        MR. BARDOS:  Thank you, Your Honor.  Just as a -- to

24   finish my introduction, I don't disagree necessarily with the

25   Government's position on the serious nature of the offense.  I

do disagree with the fact that they seem to assume -- I believe

Mr. Moore said this -- assume the worst.  I'm not sure that's

really what sentencing is about, and I'm not sure that applies

necessarily to Mr. Piccirilli.  But we agree the concept of

unregistered firearms is a difficult one, and it creates a

serious offense.  The fact that it's under a tax code doesn't

mean it's not serious.  It does, however, mean that it's a

strict liability offense, and I think that is slightly

different than your run-of-the-mill criminal offense.

In addition, Your Honor, I'm going to ask for an

exception to the Court's order.  I have two people who are

going to speak.  The third person is Mr. Piccirilli's

grandmother, and she has asked if she can come up with her

daughter.  It is possible that the two of them may have

something to say, and that would be a total of four people.

But if the Court would allow that, they need to come up

together, if that's all right.

THE COURT:  How old is Mr. Piccirilli's grandmother?

MR. BARDOS:  I'm not supposed to tell you a woman's

age in public, Your Honor.  I'm not going to do that.  May I

have a moment?  In her 90s, Your Honor.  She doesn't look that

way.  I can tell you that.

THE COURT:  I don't see anybody in the audience that

looks like they're in their 90s for sure, but yes, I'll allow

that as long as, again, we don't get too cumulative with these

```
 1    witnesses.

 2              MR. BARDOS:  I understand, Your Honor.

 3              MR. LEWIS:  Good afternoon, Your Honor.

 4              THE CLERK:  Sir, please state your full name for the

 5    record.

 6              MR. LEWIS:  David L. Lewis, L-e-w-i-s.

 7              THE CLERK:  Thank you.

 8              MR. BARDOS:  Mr. Lewis, what do you do for a

 9    living --

10              THE COURT:  Is Mr. Lewis under oath?

11              THE CLERK:  No.  Do you want him to take the stand?

12              MR. BARDOS:  Not from our perspective, Your Honor.

13              THE COURT:  All right.  Mr. Moore?

14              MR. MOORE:  No, if the testimony is strictly to

15    3553(a), I have no issue.

16              THE COURT:  All right, go ahead.

17              MR. BARDOS:  How do you know the defendant -- sorry,

18    what do you do for a living?

19              MR. LEWIS:  I'm a circuit court bailiff in Carroll

20    County.

21              MR. BARDOS:  What did you do before that, just in

22    general?

23              MR. LEWIS:  Police officer for 37 years.  I did 27

24    years with Maryland Park Police down in Montgomery County,

25    retired from there, and then I came up and did 10 years with
```

1  the Sykesville Police Department in Carroll County.

2           MR. BARDOS:  How do you know Mr. Piccirilli?

3           MR. LEWIS:  I met Jim my first year at Sykesville,

4  2003.

5           MR. BARDOS:  Did you work with him?

6           MR. LEWIS:  Yes, he eventually came on as a

7  Sykesville auxiliary police officer.

8           MR. BARDOS:  One of the issues before the Court is

9  the defendant's character.  Would you like to tell the Court

10  what you know about his character from your experience.

11           MR. LEWIS:  He is probably the most gentle, trusting

12  person I've ever met in my life.  I'm proud to call him my

13  friend.  I would trust him with my wife, my children, my home,

14  my property.  There's absolutely no question he would do

15  anything in the world for me, and I would do anything in the

16  world for him.

17           MR. BARDOS:  Briefly, as his experience as a police

18  officer, where did he fit on the sort of nonaggressive,

19  aggressive spectrum that we find sometimes with police

20  officers?

21           MR. LEWIS:  That was a problem when he said he wanted

22  to come on as a police officer, wanted to put himself through

23  the Anne Arundel County Police Academy and become a police

24  officer.  I was a little concerned because Jim did very, very

25  well with cooperative witnesses and victims, but when it came

1    to a suspect or uncooperative person, he didn't do very well

2    because he was just too nice of a guy.  A police officer has to

3    be able to at least pretend to be authoritative and take

4    control of a situation.  Jim just couldn't do that.  He was

5    just too nice.

6             MR. BARDOS:  Okay.  Finally, one of the issues before

7    the Court is whether Mr. Piccirilli will receive a jail

8    sentence and the impact that would have on him.  What is your

9    view on whether jail would be appropriate for Mr. Piccirilli?

10            MR. LEWIS:  I absolutely think it would not be

11   appropriate for Jim.  Jim was making a living, and as far as I

12   can tell, he thought he was doing everything correctly.  And I

13   don't think a jail sentence is appropriate at all.

14            MR. BARDOS:  Thank you.

15            MR. LEWIS:  Can I say one more thing?

16            MR. BARDOS:  Okay.

17            MR. LEWIS:  Just from what I've heard today, it

18   sounds like the wrong person sitting in this chair.

19            MR. BARDOS:  That's okay.

20            MR. LEWIS:  Thank you.

21            THE COURT:  Mr. Lewis, I also have read your letter,

22   your January 9, 2020, letter in addition to your testimony

23   today, and I appreciate receiving that.

24            MR. LEWIS:  Very good, thank you.  Permission to step

25   back, Your Honor?

1              THE COURT:  Yes.

2              MR. BARDOS:  Judge, just to introduce this particular

3    person, I put in my papers that there were conversations from a

4    person who worked at FJB Engineering with Mr. Piccirilli

5    regarding Mr. Piccirilli's status under the federal firearms

6    license.  Brooklyn is the person who had those conversations,

7    so she will also talk about that, as well as how she knows

8    Mr. Piccirilli.

9              THE COURT:  All right.  Thank you.

10             THE CLERK:  Please state your full name for the

11   record.

12             MS. SALISBURY:  Brooklyn P. Salisbury.

13             THE CLERK:  Thank you.

14             MR. BARDOS:  Ms. Salisbury, how do you know

15   Mr. Piccirilli?

16             MS. SALISBURY:  I met him when he was a police

17   officer in Brunswick, Maryland.

18             MR. BARDOS:  How long have you known him?

19             MS. SALISBURY:  About ten years.

20             MR. BARDOS:  At any point in time did you work for

21   FJB Engineering?

22             MS. SALISBURY:  Yes.

23             MR. BARDOS:  What was your job there?

24             MS. SALISBURY:  I was hired as a secretary, but I got

25   kind of passed around each department as an administrative

1   assistant to get things organized.

2          MR. BARDOS:  Did you work with Mr. Piccirilli?

3          MS. SALISBURY:  Yes.

4          MR. BARDOS:  You're familiar with his work at FJB

5   Engineering?

6          MS. SALISBURY:  Yes.

7          MR. BARDOS:  What did he do there?

8          MS. SALISBURY:  This term -- the name Frank gave him

9   was firearms expert was what he had me put on his business

10  card.

11         MR. BARDOS:  To your knowledge, was Mr. Piccirilli

12  ever under the federal firearms license at FJB Engineering?

13         MS. SALISBURY:  Yes.

14         MR. BARDOS:  Did you have conversations with

15  Mr. Piccirilli in the fall of 2018 about whether Mr. Piccirilli

16  was still on that FFL?

17         MR. LEWIS:  Yes.

18         MR. BARDOS:  Can you tell the Court what happened?

19         MS. SALISBURY:  Per Mr. Bloom, I was under the

20  impression that the ATF had to come in and do an investigation

21  to remove anybody being a user for the FFL.  I informed Jim

22  multiple times that there was no ATF agent that came.  Frank

23  had never mentioned to me anything about removing Jim --

24         THE COURT:  Is "Frank" Mr. Bloom?

25         MS. SALISBURY:  Yes, I'm sorry.  Yes.  Frank had

1    never mentioned anything to me about removing Jim from the FFL

2    at that time.  He wouldn't even speak about Jim, honestly, in

3    regards to everything going on.  So I did everything that went

4    through the ATF, so I was still under the impression that he

5    was on the license as well.

6              MR. BARDOS:  Did you tell Mr. Piccirilli that?

7              MS. SALISBURY:  Yes.

8              MR. BARDOS:  Do you remember how frequently?

9              MS. SALISBURY:  Probably every two or so weeks when

10   he'd ask.

11             MR. BARDOS:  That he was still under the FFL?

12             MS. SALISBURY:  Yes.

13             MR. BARDOS:  Are you also a friend of his?

14             MS. SALISBURY:  Yes.

15             MR. BARDOS:  You submitted a letter to the Court that

16   the Court has read --

17             MS. SALISBURY:  I did not.

18             MR. BARDOS:  You did not?

19             MS. SALISBURY:  I did not, no.

20             THE COURT:  Thank you, I was looking for that.  I

21   didn't think your name rang a bell.

22             MR. BARDOS:  One of the issues before the Court is to

23   assess the character of Mr. Piccirilli.  Can you give the Court

24   your opinion of his character?

25             MS. SALISBURY:  That he's a really good guy.  He

```
1   would do anything for anyone, and he wants to see everybody
2   win.  He tries -- he's a good guy.
3           MR. BARDOS:  Do you think he's a danger --
4           MS. SALISBURY:  No.
5           MR. BARDOS:  -- to society?
6           MS. SALISBURY:  No.
7           MR. BARDOS:  Thank you.
8           THE COURT:  All right.
9           MR. BARDOS:  Next, Your Honor, would be my third
10  character witness, parts A and B.
11          THE COURT:  Understood.
12          THE CLERK:  Please state your names for the record.
13          MS. DAVIS:  Mary Helen Davis.
14          MS. PICCIRILLI:  Mary Kathleen Piccirilli.
15          THE CLERK:  Thank you.
16          THE COURT:  Mrs. Davis and Mrs. Piccirilli, I've read
17  both of your letters as well about your grandson and son, and I
18  appreciate those.  I understand the need for you two to be up
19  here together to speak in support of him.
20          MS. DAVIS:  Thank you.  What do you want me to say?
21          MR. BARDOS:  Mr. Piccirilli has lived with you over
22  the past year?
23          MS. DAVIS:  Yes.  We've become -- sorry -- very
24  close... I can't...
25          THE COURT:  Is there Kleenex on the counsel table
```

anywhere?

        MR. BARDOS:  There will be.

        MS. DAVIS:  Jim, can you come hold my hand?

        THE DEFENDANT:  Your Honor, is that okay with you?

        THE COURT:  Yes.

        MS. DAVIS:  Thank you.

        THE DEFENDANT:  It's okay.  It's okay.

        MS. DAVIS:  It worked real well because he could take care of me while being with me.  I ask him so many questions, and he gives me full answers that I understand.  He takes care of the television.  He walks me back to the bedroom.  He tussles my head.  He's very, very, very kind.  Anything I want, I get what I want, plus.

        Of course, I've known him since he was an infant, and I know my husband had a very close relationship with him because there were things that Jim liked, my husband liked, and so he shared all the things with him.  Jim drew a picture which we have hanging of a -- I call it a Christmas layout.  My husband did many train layouts, and Jim would help him with the tracks.  He would draw things because he was very artistic. Jim would ask him to draw, he would do it.

        But I noticed when he was around one year old when he was learning to walk, he walked by a chair that happened to be a swivel chair and it moved, and he got down and looked under it to see what it did.

         MR. BARDOS:  So he's been living with you since he
was released last February?

         MS. DAVIS:  Uh-huh.

         MR. BARDOS:  Have you discussed this case with him?

         MS. DAVIS:  Very little.  He doesn't want me --

         MS. PICCIRILLI:  -- to be upset.

         MS. DAVIS:  -- to be upset.

         MR. BARDOS:  So he's been with you for the last 11,
almost 12 months?

         MS. DAVIS:  Yes.

         MR. BARDOS:  Is there anything else you want the
Court to know about your grandson before she decides the
sentence?

         MS. DAVIS:  I just think he's one of God's gifts.  He
has so much in his head.  Things keep going, popping into his
head.  Like he hears music and he was able to transfer that
music from his head to his guitar so I could hear what he was
doing.  When I asked him questions, I don't get a yes or a no
or "Oh, Grandmom."  You know, it's full detail --

         MS. PICCIRILLI:  Respect.

         MS. DAVIS:  Pardon?

         MS. PICCIRILLI:  Respect.

         MS. DAVIS:  Yes, a lot of respect.  He's so gentle.
And he was telling me about some of the things he had designed
and the reasons for his designing.  One thing that I remember

was something that shot two bullets or whatever it is at the
same time because some of the people who had to handle firearms
were women and they were small, and he was trying to find
things that would help them.  I don't remember much of any
other talk about firearms.

          MS. PICCIRILLI:  Also the robot at school.  He was
working with someone at the ATF.  They were ready to design
something that --

          MS. DAVIS:  They were talking about that, something
that would help the policemen again.

          MS. PICCIRILLI:  At high schools.

          MS. DAVIS:  Okay, and what was the other thing?  It
was one other thing he told me about.

          THE COURT:  It's okay if you don't remember
everything precisely right now.  I've read everything in your
letter.  It was a beautiful letter that you wrote in support of
your grandson.

          MS. DAVIS:  Thank you.

          MS. PICCIRILLI:  He doesn't deserve any of this, none
at all.  Really.  His heart is just made of gold.

          MS. DAVIS:  I think that kind of sums it.

          MR. BARDOS:  Thank you.

          MS. PICCIRILLI:  Thank you for listening.

          THE COURT:  Yes.

          Would you like to make further argument, Mr. Bardos?

1    That was your last witness, wasn't it?

2              MR. BARDOS:  My last witnesses, yes, Your Honor.

3              THE COURT:  Witnesses, yes.  Would you like to make

4    further argument with regard to the 3553(a) factors?

5              MR. BARDOS:  I would, Your Honor.  Obviously, all

6    defendants are not created equal.  I think that's clear from

7    your experience, from everybody's experience, from the Supreme

8    Court's direction -- directives.  This defendant finds himself,

9    after years of helping law enforcement, encouraging law

10   enforcement, working with the military, trying to make things

11   better -- so the Government talked about the suppressor which I

12   think I put in my papers.  No disrespect to Mr. Moore, but it's

13   a little inaccurate to say that a suppressor makes a bullet

14   more accurate because it, in fact, does the opposite.  It looks

15   that way on television.  What happens is a suppressor, because

16   it suppresses the sound, it sort of absorbs the sound, but if

17   it's in contact with the shooting apparatus, it vibrates it.

18   So it's less loud but it's also less accurate.

19             What Mr. Piccirilli was designing was something that

20   would suppress the sound but not contact the metal, so it would

21   make law enforcement and the military far more accurate without

22   revealing their locations.  That's the thing that he was

23   working on.

24             So you have this man who started out as a police

25   officer, went on to design and assist in the design of weapons,

and then ultimately it's a job doing that. He was under three different federal firearm licenses, and in order to become a responsible person under a federal firearms license, he has to be vetted. He's got to submit -- got to have his background check, an ATF has to approve him. He was approved specifically under Frank Bloom's FJB Engineering license as a responsible person. So there's some indication here, contrary to the picture painted by the Government, that this man is not rogue, that he is, in fact, dedicated to his craft and to the people, the law enforcement and military that he was attempting to help.

All of that is gone now. Everything he's worked on for the past 15 years is gone now. So should there be a punishment for this serious offense? Absolutely. I would suggest that a fair amount of punishment has already taken place. He is a convicted felon. That is not Mr. Piccirilli. He is now no longer allowed to even hold any weapon of any sort. That is directly contrary to the last 15 years of his life. He is, as the letters describe -- again, contrary to the Government's presentation -- a kind-hearted, gentle person which is so contradictory to the idea of what he did here. It is just very, very contradictory to the idea that he is attempting to sell this weapon through a dealer -- I'm not saying that what he did was okay. I'm not excusing it, but there's a context here.

1    It's one thing to go out on the street and just sell

2  to some random person.  He did not do that.  He gave it to a

3  dealer that he knew.  He checked with that dealer, and he

4  actually says, is this guy okay?  He shouldn't have been doing

5  that because it was unregistered, and you can't sell a machine

6  gun to a civilian anyway, but within that context, he is trying

7  to be as careful as he can.

8    I would note that the weapon -- we've been talking

9  about Count 1.  I was talking about Count 1 as the count that

10  he pled guilty to, the criminal information, not Count 1 of the

11  indictment.  But I think it's the same weapon.  So when he gave

12  it to Mr. McKenna, the dealer, the gun was not put together.

13  Mr. McKenna held on to that weapon for a month and then gave it

14  to the ATF.  At the time he gave it to the ATF, it had been cut

15  and made into a working machine gun.  So it was those parts --

16  and parts of a machine gun, whether they're together or not,

17  are considered a machine gun under the statute.  It was those

18  parts that Mr. Piccirilli was on the phone discussing in

19  December of 2018.

20    So I'd ask the Court as you look at -- it's a

21  balance, right?  There's all these different factors, and I'm

22  actually, frankly, much happier to be here than up there in

23  light of that.  When you look at Mr. Piccirilli's 38 years, he

24  hasn't even had a speeding ticket in almost 15 years.  He is in

25  all other aspects a law-abiding, positive contribution to

society.  This he did wrong.  He should not have had
unregistered weapons, he should not have been trying to sell
it.  There's no question about that.  But everything else that
he's done, as to his nature and characteristics, would suggest
that a jail sentence is far too severe for Mr. Piccirilli.

I will reflect back finally on the idea that these
are strict liability offenses because that, I think, is much
different.  Yes, they need to be punished and I agree with the
Government that there's a reason for that, but a strict
liability offense in criminal cases is very different than a
full intent crime.  So he's admitted to this because they
weren't registered but that doesn't mean his intentions were
malicious in any way, and I don't think there's been any
suggestion of that.

With that, Your Honor, our recommendation would be a
probation sentence, a condition be 18 months' home confinement,
with or without work as the Court decides, 200 hours of
community service, and a fine of $10,000 to be paid within 30
days.

THE COURT:  I'm sorry, a fine of $10,000, you said?

MR. BARDOS:  Yes, ma'am.

THE COURT:  Do you have anything further at this
point?

MR. BARDOS:  I think I've said enough.

THE COURT:  I want to give you all the opportunity

1    you need.

2              MR. BARDOS:  No, I appreciate that, Your Honor.

3    Thank you.

4              THE COURT:  Thank you.  All right, the Court has

5    carefully considered the January 3, 2020, presentence

6    investigation report and the position statements filed by each

7    party, as well as counsel's arguments here today and the

8    testimony or the proffers of the character witnesses, and the

9    Court will make findings with respect to the Section 3553(a)

10   factors when it announces its sentence.

11             Mr. Moore, is there anything else that the Government

12   would like to say before the Court imposes sentence?

13             MR. MOORE:  No, Your Honor.

14             THE COURT:  All right, thank you.

15             Mr. Bardos, is there anything more that you or

16   Mr. Piccirilli would like to say before the Court imposes

17   sentence?  And in particular, Mr. Piccirilli, if there is -- I

18   want to tell you if there's anything you would like to say on

19   your own behalf, now is your opportunity.  You don't have to

20   speak if you don't want to, and I won't hold it against you if

21   you don't.  On the other hand, if there's something you'd like

22   to say to the Court before I impose sentence, before I make the

23   decision in your case, I'll be happy to hear from you.

24             THE DEFENDANT:  Your Honor, if you have any issues of

25   the acceptance of responsibility, I assure you that I

1  understand, and I'm sorry to the U.S. Government and Congress

2  and the laws violated there.

3       It is my life, it's gone now.  All the things that I

4  have engineered, all the things that we've done, you know, a

5  large group of us, everything that we've made and all the

6  advancements we had and some of the prototype stuff and

7  everything that I had and everything, it's gone.  So I guess...

8  I don't know.  I don't know, Your Honor, but please don't worry

9  about the self-acceptance.

10      THE COURT:  The acceptance of responsibility?

11      THE DEFENDANT:  Yes.

12      THE COURT:  Yes.  I'll note for the record that the

13 Court did give you the three-point reduction for acceptance of

14 responsibility, and I understand your statement in that regard.

15      Is there anything further, Mr. Piccirilli?

16      THE DEFENDANT:  No, Your Honor.

17      THE COURT:  Mr. Bardos?

18      MR. BARDOS:  No.  Thank you, Your Honor.

19      THE COURT:  All right.  You can be seated.

20      THE DEFENDANT:  Thank you.

21      THE COURT:  The guidelines generally take into

22 account the information relevant to sentencing in this

23 particular case and give that information appropriate weight.

24 After considering the advisory guideline range and the

25 applicable factors from Section 3553(a) of Title 18 of the

1    United States Code and the arguments presented here today,

2    including Mr. Piccirilli's arguments in favor of a downward

3    variance, I do find that a sentence within the applicable

4    sentencing guideline range is appropriate and find that the

5    sentence of 30 months' imprisonment, followed by 3 years of

6    supervised release, which is within the applicable guideline

7    range, is a reasonable and appropriate sentence for the

8    following reasons.

9            With regard to the history and characteristics of the

10   defendant, Mr. Piccirilli is a 38-year-old male who appears

11   before the Court convicted of his first offense.  His personal

12   history certainly depicts an individual who has had a good

13   upbringing with the love and support of his parents, his

14   grandparents, his extended family, and all of the friends and

15   family who are in court today to support Mr. Piccirilli.  Up

16   until now, he has lived a life well within the law.  He

17   obtained his GED and gained additional education by attending

18   local community colleges.  He is in good health and a father of

19   two.

20           The defendant's employment history includes working

21   as a police officer, a job where he was sworn to uphold the

22   law, designing and making firearms for approximately 15 years,

23   as well as providing demonstrations and showing prototypes of

24   weapons to federal and state agencies, including the Pentagon,

25   the United States Marine Corps, police departments and several

gun shops.  This employment history cuts both ways, however,
because with this background, particularly as a police officer
and with the trust that was bestowed in connection with making
firearms for 15 years, Mr. Piccirilli would be expected to know
the law and to obey the law well within the confines of the
law.

The other thing that cuts both ways about this is
that Mr. Piccirilli is capable of manufacturing these types of
weapons in the future and did do so.  Certainly he has -- the
Court finds that he has significant expertise in this area.

With regard to the nature and circumstances of the
offense, the Court finds that Mr. Piccirilli unlawfully
possessed 19 firearms that are prohibited by the National
Firearms Act.  Mr. Piccirilli knew the firearms had the
characteristics that make them prohibited.  Mr. Piccirilli left
one of these unregistered firearms with another person who
happened to be working with the Bureau of Alcohol, Tobacco and
Firearms and whose possession was also illegal because the
firearm itself was unregistered and who Mr. Piccirilli did not
know.  That person was supposed to facilitate the unlawful sale
of the registered firearm -- of the unregistered firearm.

Mr. Piccirilli spoke with the potential buyer on the
phone and made statements indicating that he knew the unlawful
nature of his conduct, and those statements are set forth in
the amended presentence investigation report at paragraphs 12

1　through 27.

2　　　　　Before the sale could be completed, ATF arrested

3　Mr. Piccirilli for his unlawful conduct.  Mr. Piccirilli had 18

4　more prohibited firearms in his vehicle and home.  Those

5　firearms were found and seized as a result of search warrants

6　issued after his arrest.

7　　　　　With respect to the need to reflect the seriousness

8　of the offense, promote respect for the law and to provide just

9　punishment, the Court finds this offense to be an extremely

10　serious one.  The potential, albeit the offense of conviction a

11　strict liability one, it is nonetheless an extremely serious

12　offense.  The potential for danger and risk to the public is

13　immense when an unlicensed person possesses unregistered

14　weapons of this nature and/or attempts to sell them to any

15　other person.  This is a highly dangerous type of weapon and

16　the seriousness is increased in these types of offenses, in

17　Title 26 offenses, because there is no paper trail.  The

18　seriousness of this offense is even greater given

19　Mr. Piccirilli's former role as a police officer and as an

20　expert in firearms, capable of manufacturing these types of

21　weapons.

22　　　　　The Court believes for these reasons that a term of

23　imprisonment is necessary to promote respect for the law.  The

24　Court also finds the need to provide a just punishment is

25　supported by a term of imprisonment, given the seriousness of

1  the offense and the history of the defendant.

2           As to the need to afford adequate deterrence, the

3  Court agrees with the Government that a term of imprisonment is

4  necessary to afford adequate deterrence for Mr. Piccirilli.

5  Mr. Piccirilli is a former police officer and claims to be an

6  expert in firearms making.  In fact, he is an expert in

7  firearms making.  He was responsible for knowing that it was

8  unlawful to possess and/or sell unregistered firearms, and his

9  actions and omissions show that he did have such knowledge.

10 Yet Mr. Piccirilli continued to violate the law by possessing

11 19 unregistered firearms and attempting to sell one of them.

12          With respect to the need to protect the public from

13 further crimes of the defendant, the Court agrees with the

14 Government that the potential for Mr. Piccirilli committing

15 further crimes of this nature is a danger to the public because

16 the possession and/or attempted sale of unregistered machine

17 guns poses a great threat to public safety in general.  And as

18 noted, Mr. Piccirilli has the capability to create and/or

19 obtain more prohibited firearms.

20          Though advisory, Mr. Piccirilli is ineligible for

21 probation pursuant to the guidelines.  Further, I reject

22 Mr. Piccirilli's request for a downward variance to a sentence

23 of 3 years' probation.  The extent of such a variance is

24 extreme given the guideline sentencing range of 30 to 37

25 months, 36 when you consider the plea agreement.  And there is

no justification sufficiently compelling to support any

variance, let alone one of that degree which would wipe out

imprisonment completely.

For all of the reasons I've stated, the Court

declines to vary from the guidelines range.  That's noted

though it is not presumed reasonable, the guidelines

established a sentencing range of 30 to 37 months'

imprisonment.  Based on all of the sentencing factors, the

Court finds that a sentence at the bottom of the guidelines is

reasonable because it is sufficient but not greater than

necessary to serve the purpose of sentencing, given the

particular circumstances of this offense and of this particular

defendant.

Therefore, it is the judgment of the Court that the

defendant be committed to the custody of the Bureau of Prisons

for a term of 30 months.  Upon release from prison, the

defendant shall be placed on supervised release for a term of

3 years.  Within 72 hours of release from custody, the

defendant shall report in person to the United States Probation

Office in the district to which the defendant is released.

Mr. Piccirilli, while on supervised release, you must

not commit another federal, state or local crime.  You must not

possess a firearm or other dangerous device, and you must not

unlawfully possess a controlled substance.  You also must

comply with the standard terms and conditions of supervised

release as recommended by the United States Sentencing
Commission and as adopted by this court.

        In addition, Mr. Piccirilli shall comply with the
following special conditions of supervised release:
Mr. Piccirilli, you must participate in a substance abuse
program and follow the rules and regulations of that program.
The probation officer will supervise your participation in the
program.  And you must submit to substance abuse testing to
determine if you have used a prohibited substance.

        You must participate in mental health treatment in a
mental health treatment program and follow the rules and
regulations of that program.  The probation officer, in
consultation with the treatment provider, will supervise your
participation in the program.

        At the November 4, 2019, plea hearing, the Government
provided you, Mr. Piccirilli, with notice of its intent to seek
forfeiture pursuant to Federal Rule of Criminal Procedure 32.2,
pursuant to 26 United States Code, Section 5872, and the
Court -- the Government has so moved, and the Court orders
forfeiture of all 19 firearms involved in this offense.  That
is those firearms described in Counts 1 through 4 of the
original indictment.  Pursuant to 28 United States Code,
Section 2461(c), the procedures in 21 United States Code,
Section 853, apply to all stages of the criminal forfeiture.
The disposal provisions described in 26 USC, Section 5872(b),

1  shall also apply.

2          So the Government has moved for -- the Government has

3  filed a motion for a preliminary order of forfeiture, and that

4  order is granted.

5          With respect to the fine, the Court imposes a $10,000

6  fine which is the statutory maximum pursuant to 26 United

7  States Code, Section 5871.  The fine is due immediately.  To

8  the extent Mr. Piccirilli cannot immediately comply, the Court

9  finds that pursuant to his plea agreement, the defendant has

10  agreed the United States may fully employ all powers to collect

11  on the total amount of the debt as provided by law.  Until the

12  judgment is satisfied, the defendant has agreed to disclose all

13  assets and permit the financial litigation unit to obtain a

14  credit report and view his federal and state income tax returns

15  in order to evaluate Mr. Piccirilli's ability to pay.

16          The Court finds that there is no identifiable victim

17  here.  Accordingly, the Court does not order the defendant to

18  pay restitution.

19          Finally, the Court orders the defendant to pay a

20  special assessment due immediately of $100.  To the extent

21  Mr. Piccirilli cannot immediately comply, the Court finds that

22  pursuant to the plea agreement, the defendant has agreed the

23  United States may fully employ all powers to collect on the

24  total amount of the special assessment.

25          For reasons other than those already discussed, does

1  counsel for the defendant or for the Government know of any

2  reason why the sentence should not be imposed as stated?  I'll

3  start with the defendant.

4          MR. BARDOS:  Your Honor, can we approach?

5          THE COURT:  Yes.

6      (Bench conference on the sealed record.)

7      (It is the policy of this court that every guilty plea and

8  sentencing proceeding include a bench conference concerning

9  whether the defendant is or is not cooperating.)

10     (Bench conference concluded.)

11         MR. BARDOS:  Your Honor, we would also ask if the

12  Court would consider recommending a camp for Mr. Piccirilli in

13  light of his lack of criminal record and recommend that the

14  Bureau of Prisons place him in a place as close to Baltimore as

15  possible.

16         THE COURT:  Okay.  Does the Government have a

17  position as to the recommendation of a camp?

18         MR. MOORE:  No position, Your Honor.

19         MR. BARDOS:  Obviously, it would be up to the Bureau,

20  but they do take into consideration the Court's

21  recommendation.

22         THE COURT:  All right.  Thank you for that.

23         MR. BARDOS:  Your Honor, I do have one more item.  I

24  think we're in agreement on this.  Mr. Piccirilli has been on

25  various forms of release since last February and has complied,

1  I think as Pretrial put it, satisfactorily because that's the
2  highest level you can do for pretrial.  We would ask that he'd
3  be allowed to remain on the same conditions of release until he
4  self-surrenders once the Bureau of Prisons designates him.

5           THE COURT:  Yes.  I agree with that and will permit
6  him to self-surrender, and I'll address that in a minute.

7           Otherwise, I order that the sentence be imposed as
8  stated.  With regard to recommendations to the Bureau of
9  Prisons, the Court will recommend that the defendant be
10 assigned to the extent possible to a facility as close to
11 Baltimore as possible, given his family and other support
12 that's here in the Baltimore area, and the Court will also
13 recommend that the Bureau of Prisons assign Mr. Piccirilli to a
14 camp facility to the extent possible.

15          Mr. Bardos, have you spoken to your client about any
16 appeal rights that he may or may not have?

17          MR. BARDOS:  I have not, Your Honor, but I believe
18 the plea agreement waives them, but I will talk to him about
19 that.

20          THE COURT:  Okay.  The plea agreement does --
21 Mr. Piccirilli, in your plea agreement, you waived your right
22 to appeal the Court's sentence, among other things.  I wanted
23 to advise you of that, and Mr. Bardos is also going to make
24 sure that you understand that plea waiver which was also
25 something we went over at the time of your plea hearing, and

1   that is contained in paragraph 11 of the plea agreement.

2           Also, Mr. Bardos, please make sure -- and I will

3   advise you as well, Mr. Piccirilli -- that if you choose to

4   file a notice of appeal, you must do so in writing within 14

5   days from the entry of the Court's judgment in this case.

6           Is there a motion for leave to dismiss the remaining

7   charges in the indictment, Mr. Moore?

8           MR. MOORE:  Yes, Your Honor.

9           THE COURT:  All right.  The Court grants the motion

10  to dismiss what I believe are Counts 2, 3 and 4 of the

11  indictment?

12          MR. MOORE:  Just to clarify, he pled guilty to the

13  superseding information, so the entire indictment is going to

14  get dismissed.

15          THE COURT:  Thank you.  So the entire indictment is

16  dismissed.  The entire indictment contained four counts; is

17  that correct?

18          MR. MOORE:  That's correct, Your Honor.

19          THE COURT:  So the only thing remaining was the

20  superseding information which only contained the one count to

21  which Mr. Piccirilli pled guilty; is that correct?

22          MR. MOORE:  Yes, Your Honor.

23          THE COURT:  Now that's clear.

24          With regard to the voluntary surrender, I have

25  received the report from Pretrial Services that indicates that

1   Mr. Piccirilli has performed satisfactorily while out on

2   personal recognizance pending sentencing.  Does the Government

3   object to Mr. Piccirilli remaining -- voluntarily surrendering?

4           MR. MOORE:  There's no objection, Your Honor.

5           THE COURT:  All right.  Then the Court will allow

6   Mr. Piccirilli to voluntarily surrender to the Bureau of

7   Prisons.  I find that he has offered clear and convincing

8   evidence through the Pretrial Services report that he's not

9   likely to flee and is not likely to pose a danger to any other

10  person or the community if released.  Accordingly, I order that

11  Mr. Piccirilli be permitted to surrender voluntarily at the

12  institution designated by the Bureau of Prisons as notified by

13  the United States Marshal.  The defendant shall remain released

14  subject to the conditions set forth in the order setting

15  conditions of release previously filed and the standard

16  conditions of release in this district.

17          So as to the date, the defendant shall voluntarily

18  surrender to the United States Marshals Service on March 16,

19  2020, which is a Monday, and before I end the hearing,

20  Mr. Piccirilli, I want to remind you of two more things.

21  First, if you knowingly fail to report as ordered to the

22  Marshals Service on March 16, 2020, I may impose an additional

23  sentence upon you of up to 5 years in prison or a $250,000 fine

24  or both.

25          Second, if you commit any offense whatsoever before

1 your voluntary surrender date, then in addition to this

2 sentence that I just imposed today and in addition to any

3 sentence for any additional offense, I must impose an

4 additional sentence.  If the offense you commit is a felony, I

5 must sentence you to an additional term of imprisonment of up

6 to 10 years.  If the offense you commit is a misdemeanor, I

7 must sentence you to an additional term of imprisonment of up

8 to one year.  These sentences would run consecutively, that is,

9 one after the other rather than concurrently.

10          Have I left anything out, or is there anything

11 unclear or confusing about the sentence or any mistake or

12 problem that anyone would like to point out?  For the

13 Government?

14          MR. MOORE:  The Government does not believe you've

15 left anything out, Your Honor.

16          THE COURT:  For the defense, is there anything more

17 you want to add?

18          MR. BARDOS:  No.  Thank you, Judge.

19          THE COURT:  Any problem?  Is the probation officer

20 here?

21          PROBATION OFFICER:  Yes, Your Honor.

22          THE COURT:  Is there anything that you want to add or

23 anything that's confusing?

24          PROBATION OFFICER:  No, Your Honor.

25          THE COURT:  All right.  Then before I conclude the

1  hearing, I want to just say one more thing, Mr. Piccirilli.

2  During your colloquy with the Court during your allocution, I

3  think you mentioned a couple of times that your life is gone.

4  I understand the sense in which you meant that because of the

5  nature of what your career has been.

6         But I want to assure you your life is not gone.  You

7  have all of these people in the courtroom here supporting you

8  today, and I don't expect that that will change.  So good luck

9  to you, Mr. Piccirilli.

10        Court is adjourned.

11        THE CLERK:  All rise.  This Honorable Court now

12  stands adjourned.

13     (Proceedings concluded at 3:30 p.m.)

14

15        I, Patricia G. Mitchell, RMR, CRR, do hereby certify
   that the foregoing is a correct transcript from the
   stenographic record of proceedings in the U.S. versus
16  Piccirilli matter.

17        Dated this 1st day of August 2021.

18

19                    *Patricia G. Mitchell*

20        _____
                 Patricia G. Mitchell
21               Official Court Reporter

22

23

24

25

**< Dates >**
**August 2021.** 77:20 .
**December 26, 2019** 9:16 .
**December 27, 2019** 5:8 .
**December 30, 2019** 5:10 .
**February 7, 2019** 26:16 .
**January 1, 2020** 5:8 .
**January 10, 2020** 5:14 .
**January 13, 2020** 1:17 .
**January 2, 2020** 5:4 .
**January 3, 2020** 63:5 .
**January 6, 2020** 5:12 .
**January 9, 2020** 51:22 .
**June 2018** 15:21 .
**March 16, 2020** 75:18, 75:22 .
**November 2018** 14:18 .
**November 4, 2019** 3:9, 3:15, 10:21, 70:15 .
**October 11** 14:12, 14:20 .
**$10,000** 11:15, 62:18, 62:20, 71:5 .
**$100,000** 36:1, 36:9 .
**$100.** 11:16, 36:2, 71:20 .
**$250,000** 75:23 .
**(1:33** 2:2 .
.
.
**< 1 >.**
**1** 3:12, 21:21, 23:1, 27:2, 28:15, 36:1, 40:13, 40:25, 41:22, 61:9, 61:10, 70:21 .
**1(a** 29:11 .
**1(b)(1** 20:25 .
**1(b)(1)(b** 9:18 .
**1.** 31:24, 61:9 .
**1.3** 13:7 .
**10** 11:14, 27:3, 49:25, 76:6 .
**10,000** 36:1, 36:9, 36:10 .
**101** 1:48 .
**11** 39:11, 57:8, 74:1 .
**11(c)(1)(c** 11:6 .
**12** 27:3, 27:4, 27:18, 57:9, 66:25 .
**14** 74:4 .
**15** 34:5, 60:13, 60:18, 61:24, 65:22, 66:4 .
**16** 35:7 .
**18** 7:8, 11:24, 13:16, 17:3, 17:18, 18:11, 19:25, 23:10, 25:20, 25:21, 27:5, 28:15, 29:13, 29:18, 34:1, 34:8, 36:20, 36:23, 62:16, 64:25, 67:3 .
**18.** 13:17, 13:22, 19:17 .
**19** 12:15, 26:16, 28:2, 28:3, 28:6, 28:17, 29:17, 31:5, 33:21, 34:25, 35:23, 36:5, 36:20, 39:15, 41:16, 66:13, 68:11, 70:20 .
**19-cr-00060-sdt-1** 1:10 .
**19.** 35:17 .
**1994** 26:19 .
**1:** 1:10 .
**1:30** 1:18 .
**1B1** 28:5 .
**1b1.2(c** 13:7, 27:21 .
**1st** 77:20 .
.
**< 2 >.**
**2** 13:14, 13:15, 13:21, 13:25, 14:1, 17:3, 27:6, 36:7, 40:11, 74:10 .
**2(c** 28:5 .
**2.** 18:1 .
**20** 35:3 .
**200** 62:17 .
**2003** 50:4 .
**2018** 14:3, 14:12, 15:23, 16:5, 16:7, 18:15, 33:11, 53:15 .
**2018.** 7:4, 22:18, 61:19 .
**21** 70:23 .
**21201** 1:49 .
**22** 29:18 .
**24** 12:7 .
**2461(c** 70:23 .
**26** 3:11, 7:13, 11:11, 12:23, 13:20, 26:18, 26:23, 28:1, 28:3, 28:6, 28:19, 29:10, 29:14, 33:21, 36:10, 67:17, 70:18, 70:25, 71:6 .
**27** 27:13, 49:23, 67:1 .
**28** 25:12, 70:22 .
**2K2** 9:18, 20:25, 29:11 .
**2k2(b)(1** 24:5 .
**2k2.1(b)(1** 20:1 .
**2k2.1(b)(1)(b** 12:6, 26:11, 28:20 .
.
**< 3 >.**
**3** 11:15, 13:14, 36:1, 40:11, 65:5, 68:23, 69:18, 74:10 .
**30** 17:19, 18:11, 25:21, 35:25, 47:15, 62:18, 65:5, 68:24, 69:7, 69:16 .
**32.2** 70:17 .
**3553(a** 11:25, 22:12, 30:19, 36:23, 37:11, 37:18, 37:21, 38:2, 38:11, 46:24, 47:2, 49:15, 59:4, 63:9, 64:25 .
**36** 11:8, 38:6, 46:22, 68:25 .
**37** 35:25, 47:15, 49:23, 68:24, 69:7 .
**38** 61:23 .
**38-year-old** 65:10 .
**3:30** 77:13 .
**3D1.2** 28:10 .
**3E1.1** 32:2 .
**3e1.1(a** 29:21, 34:14 .
**3e1.1(b** 35:4 .
.
.
**< 4 >.**
**4** 13:15, 27:6, 29:18, 40:11, 70:21, 74:10 .
**479.103.** 27:14 .
**4th** 1:48 .
.
.
**< 5 >.**
**5** 12:8, 75:23 .
**511** 26:19 .
**5845(a** 26:18, 26:24, 29:15 .
**5861** 13:20, 17:13, 17:25, 19:20, 25:12 .
**5861(d** 3:11, 7:13, 11:11, 12:23, 25:24, 28:2, 28:4, 28:6, 28:19, 29:10, 33:22, 34:20, 36:10 .
**5871.** 71:7 .
**5872** 70:18 .
**5872(b** 70:25 .
**5B1.1** 36:7 .
.
**< 6 >.**
**6** 23:12 .

**600** 26:19 .
**6B** 13:5 .
.
.
**< 7 >** .
**72** 69:18 .
.
.
**< 8 >** .
**8** 12:7 .
**826** 17:12 .
**853** 70:24 .
.
.
**< 9 >** .
**90s** 48:21, 48:24 .
**922** 28:7 .
**922(g** 19:19 .
**922(o** 7:8, 13:16, 17:3, 17:8,
   19:16, 19:25, 21:1, 21:15,
   22:14, 36:21 .
.
.
**< A >** .
**ability** 71:15 .
**able** 41:7, 42:21, 51:3,
   57:16 .
**Absolutely** 44:17, 50:14, 51:10,
   60:14 .
**absorbs** 59:16 .
**abuse** 70:5, 70:8 .
**Academy** 50:23 .
**accept** 33:18, 47:21 .
**acceptance** 6:9, 6:12, 7:24, 9:4,
   10:13, 10:19, 10:22, 29:19,
   29:22, 29:24, 30:3, 31:12,
   32:2, 32:3, 34:10, 34:15,
   35:7, 35:16, 63:25, 64:10,
   64:13 .
**accepted** 3:13, 34:16 .
**accepting** 6:20, 8:14, 8:17, 11:1,
   30:1, 30:5, 31:23 .
**accepts** 7:1, 7:2, 7:14, 10:24,
   30:15 .
**According** 35:19 .
**Accordingly** 9:12, 29:18, 71:17,
   75:10 .
**account** 37:22, 64:22 .
**accountable** 24:4, 24:24, 32:7,
   41:11 .

**accounted** 39:10 .
**accuracy** 9:10, 40:5 .
**accurate** 5:22, 5:24, 6:6, 23:15,
   36:16, 39:21, 40:5, 59:14,
   59:18, 59:21 .
**accurately** 47:11 .
**Act** 26:17, 27:9, 66:14 .
**actions** 15:4, 44:1, 68:9 .
**active** 39:4 .
**actively** 16:23, 19:3 .
**activities** 15:6, 15:12 .
**actual** 8:20, 10:25, 19:25, 24:2,
   24:5 .
**actually** 6:20, 8:1, 8:13, 8:17,
   19:21, 20:7, 21:11, 21:14,
   21:17, 22:12, 29:23, 30:1,
   31:20, 32:12, 32:14, 38:22,
   40:24, 40:25, 61:4,
   61:22 .
**Adam** 1:37 .
**add** 9:6, 36:12, 46:3, 46:16,
   76:17, 76:22 .
**addition** 13:19, 48:10, 51:22,
   70:3, 76:1, 76:2 .
**additional** 6:2, 6:4, 7:22, 8:16,
   8:25, 27:22, 27:24, 30:2,
   32:6, 35:5, 65:17, 75:22,
   76:3, 76:4, 76:5, 76:7 .
**Additionally** 9:9 .
**address** 6:12, 7:18, 12:2, 18:7,
   38:1, 73:6 .
**adds** 17:19 .
**adequate** 37:5, 68:2, 68:4 .
**adequately** 10:25 .
**adjourned** 77:10, 77:12 .
**adjustment** 35:6 .
**administer** 3:2 .
**administrative** 14:17,
   52:25 .
**admits** 21:20, 21:22, 23:1,
   24:14, 27:4, 27:7, 28:18 .
**admitted** 13:9, 22:12, 27:17,
   27:25, 33:8, 33:22, 34:19,
   40:19, 62:11 .
**admitting** 32:4, 32:6,
   34:17 .
**adopted** 10:11, 30:4, 70:2 .
**adopting** 10:15, 10:16 .
**adopts** 9:12, 9:14 .
**advancements** 64:6 .

**advise** 73:23, 74:3 .
**advised** 33:5 .
**advisory** 11:20, 12:1, 35:22,
   35:24, 37:19, 47:22, 64:24,
   68:20 .
**afford** 37:5, 68:2, 68:4 .
**afternoon** 2:8, 2:9, 2:18,
   49:3 .
**age** 48:20 .
**agencies** 65:24 .
**Agent** 1:37, 2:14, 53:22 .
**aggressive** 50:19 .
**agree** 8:19, 19:9, 32:10, 48:4,
   62:8, 73:5 .
**agreed** 6:16, 8:3, 8:4, 11:5,
   12:11, 71:10, 71:12,
   71:22 .
**agreed-upon** 38:8 .
**agreeing** 19:18, 33:4 .
**agreement** 6:11, 10:23, 10:24,
   11:1, 11:4, 11:7, 13:5, 13:17,
   20:19, 23:13, 24:13, 27:4,
   27:18, 27:21, 38:8, 68:25,
   71:9, 71:22, 72:24, 73:18,
   73:20, 73:21, 74:1 .
**agrees** 21:17, 68:3, 68:13 .
**ahead** 49:16 .
**aims** 46:23 .
**air** 42:6 .
**akin** 19:19 .
**albeit** 67:10 .
**Alcohol** 66:17 .
**allege** 18:2 .
**alleging** 24:22 .
**allocution** 77:2 .
**allow** 18:21, 48:16, 48:24,
   75:5 .
**allowed** 16:21, 22:1, 30:25,
   60:17, 73:3 .
**almost** 57:9, 61:24 .
**alone** 69:2 .
**Already** 33:22, 37:20, 40:19,
   45:19, 47:13, 60:15,
   71:25 .
**although** 22:14 .
**amended** 66:25 .
**Amendment** 45:11, 45:12 .
**AMERICA** 1:5 .
**among** 37:15, 73:22 .
**amount** 31:18, 39:2, 60:15,

71:11, 71:24 .

**analysis** 23:18 .

**and/or** 67:14, 68:8, 68:16, 68:18 .

**Anne** 50:23 .

**announces** 63:10 .

**answers** 56:10 .

**anybody** 21:23, 48:23, 53:21 .

**anyway** 61:6 .

**apparatus** 59:17 .

**apparently** 44:4 .

**appeal** 73:16, 73:22, 74:4 .

**appearance** 2:17 .

**appears** 5:16, 65:10 .

**applicable** 8:10, 11:23, 19:15, 20:9, 20:23, 29:25, 37:20, 64:25, 65:3, 65:6 .

**Application** 12:3, 12:8 .

**applied** 12:12 .

**applies** 12:9, 20:5, 21:2, 26:1, 48:3 .

**apply** 9:22, 9:25, 18:5, 20:10, 22:14, 23:12, 26:12, 28:20, 35:2, 70:24, 71:1 .

**appreciate** 31:9, 34:12, 42:2, 47:21, 51:23, 55:18, 63:2 .

**approach** 72:4 .

**appropriate** 19:11, 31:18, 36:25, 37:22, 38:12, 47:19, 51:9, 51:11, 51:13, 64:23, 65:4, 65:7 .

**appropriately** 9:3 .

**approve** 60:5 .

**approved** 47:15, 60:5 .

**approximately** 65:22 .

**area** 66:10, 73:12 .

**argue** 20:12, 20:16, 21:3, 21:15 .

**argues** 40:10 .

**arguing** 14:25, 21:3 .

**argument** 7:18, 9:24, 16:14, 23:9, 24:9, 25:7, 30:6, 30:18, 33:25, 34:24, 47:1, 47:6, 58:25, 59:4 .

**arguments** 10:1, 12:3, 12:25, 20:17, 63:7, 65:1, 65:2 .

**arms** 45:11 .

**around** 16:2, 52:25, 56:22 .

**arrest** 28:14, 67:6 .

**arrested** 67:2 .

**articulate** 25:9 .

**artistic** 56:20 .

**Arundel** 50:23 .

**aspects** 61:25 .

**assert** 44:11 .

**assess** 54:23 .

**assessment** 11:16, 11:17, 36:2, 71:20, 71:24 .

**assets** 71:13 .

**assign** 73:13 .

**assigned** 73:10 .

**assist** 59:25 .

**Assistant** 1:29, 14:17, 53:1 .

**assisted** 35:8 .

**assume** 33:12, 42:13, 48:1, 48:2 .

**assure** 63:25, 77:6 .

**ATF** 1:37, 2:14, 14:13, 16:21, 21:25, 27:14, 41:5, 53:20, 53:22, 54:4, 58:7, 60:5, 61:14, 67:2 .

**Attachment** 13:10 .

**attempted** 33:1, 41:22, 68:16 .

**attempting** 60:10, 60:23, 68:11 .

**attempts** 67:14 .

**attending** 65:17 .

**attention** 22:17 .

**Attorney** 13:6 .

**Attorneys** 1:29 .

**attribute** 44:1 .

**audience** 48:23 .

**auspice** 43:1 .

**author** 6:8 .

**authoritative** 51:3 .

**authorities** 35:8, 35:10 .

**automatic** 38:22, 39:8, 39:12, 39:18 .

**auxiliary** 50:7 .

**available** 37:19, 39:6 .

**avoid** 37:14 .

**aware** 4:23, 21:8, 43:25 .

**away** 22:17 .

. 

. 

**< B >** .

**back** 17:24, 20:20, 21:16, 22:11,

23:23, 40:8, 43:2, 43:24, 45:3, 45:24, 46:4, 51:25, 56:11, 62:6 .

**background** 43:22, 45:17, 60:4, 66:2 .

**bad** 30:22 .

**bailiff** 49:19 .

**bait** 24:23 .

**balance** 25:2, 61:21 .

**Baltimore** 1:16, 1:49, 72:14, 73:11, 73:12 .

**bar** 20:17 .

**BARDOS** 1:34, 2:18, 2:19, 2:23, 3:1, 3:18, 3:20, 3:24, 3:25, 4:3, 4:6, 4:11, 4:21, 5:25, 6:7, 6:23, 6:25, 7:20, 8:7, 8:11, 9:15, 10:3, 10:4, 10:8, 10:11, 10:17, 10:20, 11:18, 13:1, 13:3, 15:2, 15:17, 15:21, 16:13, 16:15, 19:14, 24:9, 25:6, 25:8, 26:4, 26:6, 26:7, 29:1, 29:3, 30:6, 30:7, 31:10, 32:21, 32:23, 33:4, 33:14, 33:16, 33:24, 34:18, 34:21, 36:14, 36:16, 41:4, 47:1, 47:9, 47:23, 48:19, 49:2, 49:8, 49:12, 49:17, 49:21, 50:2, 50:5, 50:8, 50:17, 51:6, 51:14, 51:16, 51:19, 52:2, 52:14, 52:18, 52:20, 52:23, 53:2, 53:4, 53:7, 53:11, 53:14, 53:18, 54:6, 54:8, 54:11, 54:13, 54:15, 54:18, 54:22, 55:3, 55:5, 55:7, 55:9, 55:21, 56:2, 57:1, 57:4, 57:8, 57:11, 58:22, 58:25, 59:2, 59:5, 62:21, 62:24, 63:2, 63:15, 64:17, 64:18, 72:4, 72:11, 72:19, 72:23, 73:15, 73:17, 73:23, 74:2, 76:18 .

**bare-bone** 31:21, 44:8 .

**base** 12:6, 28:21, 29:6, 29:12 .

**Based** 4:3, 12:4, 12:13, 69:8 .

**basis** 31:3, 31:24 .

**bear** 44:12, 45:11 .

**beautiful** 58:16 .

**become** 50:23, 55:23, 60:2 .

becomes 14:19 .
bedroom 56:11 .
begin 11:25 .
beginning 24:18, 24:24, 42:4 .
behalf 2:12, 6:21, 7:22, 17:1, 37:24, 63:19 .
behaves 39:9 .
behavior 11:1, 22:13, 42:20 .
believe 10:4, 16:10, 19:4, 40:11, 48:1, 73:17, 74:10, 76:14 .
believes 67:22 .
bell 54:21 .
belong 6:9 .
Bench 72:6, 72:8, 72:10 .
best 32:24 .
bestowed 66:3 .
better 59:11 .
beyond 6:15 .
big 34:3 .
binding 11:20 .
bit 7:19, 20:18, 22:8, 41:20, 43:23 .
blame 41:12, 43:3 .
blessing 43:23 .
Bloom 14:12, 14:15, 16:9, 16:16, 16:17, 53:19, 53:24, 60:6 .
boil 20:20 .
books 41:24 .
bottom 17:18, 21:23, 69:9 .
bound 11:7 .
Brandon 1:27, 2:11 .
break 19:22 .
briefing 22:3 .
Briefly 45:7, 50:17 .
brings 35:2, 43:17 .
broader 19:7, 46:11 .
Brooklyn 52:6, 52:12 .
Brunswick 52:17 .
builds 23:22 .
bullet 38:23, 59:13 .
bullets 38:25, 58:1 .
bump 39:7 .
bunch 34:3 .
Bureau 66:17, 69:15, 72:14, 72:19, 73:4, 73:8, 73:13, 75:6, 75:12 .

business 21:25, 27:16, 53:9 .
buy 15:25 .
buyer 66:22 .
.
.
< C > .
calculate 11:22 .
calculated 13:8, 37:20 .
calculates 29:7 .
calculating 11:25 .
calculations 36:12, 36:15, 36:19 .
call 2:7, 13:2, 46:1, 50:12, 56:18 .
calm 42:8 .
camp 72:12, 72:17, 73:14 .
capability 68:18 .
capable 8:21, 40:18, 40:22, 44:18, 66:8, 67:20 .
capacity 19:12 .
car 16:3, 39:24 .
card 53:10 .
care 37:9, 56:9, 56:10 .
career 77:5 .
careful 61:7 .
carefully 5:4, 31:15, 37:23, 63:5 .
Carroll 49:19, 50:1 .
case 2:7, 2:14, 3:16, 6:10, 6:15, 13:4, 17:23, 20:7, 26:13, 26:15, 30:20, 30:22, 30:23, 37:23, 38:3, 47:12, 47:14, 57:4, 63:23, 64:23, 74:5 .
cases 21:6, 23:24, 25:18, 38:24, 62:10 .
Category 35:21, 35:23 .
caution 47:4 .
Certainly 8:21, 16:13, 20:13, 24:15, 31:15, 31:16, 41:15, 41:17, 42:2, 42:8, 42:24, 44:21, 65:12, 66:9 .
certify 77:15 .
CFR 27:13 .
chain 41:13 .
chair 51:18, 56:23, 56:24 .
challenge 30:14, 32:19 .
challenged 30:13, 30:14 .
change 77:8 .
character 33:12, 47:3, 47:4, 50:9, 50:10, 54:23, 54:24,

55:10, 63:8 .
characteristic 12:4, 26:12 .
characteristics 26:23, 27:8, 29:15, 37:2, 43:17, 62:4, 65:9, 66:15 .
charge 7:8, 13:13, 13:14 .
charged 3:12, 19:24 .
charges 33:17, 74:7 .
charging 27:24 .
check 60:5 .
checked 61:3 .
children 50:13 .
choose 74:3 .
chooses 47:7 .
Christmas 56:18 .
circuit 49:19 .
circumstances 18:12, 37:1, 38:2, 66:11, 69:12 .
citizens 46:5 .
civilian 61:6 .
claims 68:5 .
clarification 10:9, 31:10 .
clarify 6:23, 9:15, 74:12 .
cleanly 41:24 .
clear 4:21, 21:17, 22:3, 24:13, 32:1, 36:18, 59:6, 74:23, 75:7 .
CLERK 2:3, 3:1, 3:3, 3:5, 3:8, 49:4, 49:7, 49:11, 52:10, 52:13, 55:12, 55:15, 77:11 .
client 4:1, 5:25, 6:13, 30:21, 73:15 .
close 18:6, 27:15, 28:13, 55:24, 56:15, 72:14, 73:10 .
Code 3:11, 11:25, 13:20, 25:12, 26:18, 30:12, 33:6, 36:23, 41:4, 46:4, 46:17, 48:6, 65:1, 70:18, 70:22, 70:23, 71:7 .
collect 71:10, 71:23 .
colleges 65:18 .
Collier 1:37, 2:13 .
colloquy 77:2 .
comes 23:20, 23:23, 42:6, 43:22 .
coming 40:8, 40:11, 40:13, 40:15, 44:12, 45:3, 46:8, 46:18 .
comment 36:7 .

**commentary** 32:2 .

**comments** 31:14 .

**Commission** 27:22, 37:13, 70:2 .

**commit** 69:22, 75:25, 76:4, 76:6 .

**committed** 69:15 .

**committing** 68:14 .

**communities** 45:15 .

**community** 62:18, 65:18, 75:10 .

**company** 14:13 .

**compelling** 69:1 .

**completed** 67:2 .

**completely** 43:1, 44:7, 44:12, 44:13, 45:10, 69:3 .

**complicated** 43:13 .

**complied** 72:25 .

**comply** 69:25, 70:3, 71:8, 71:21 .

**compounds** 40:6 .

**comprising** 32:5, 34:18 .

**computation** 4:24 .

**computer** 1:41 .

**concept** 48:4 .

**concern** 30:8, 39:13, 40:6 .

**concerned** 50:24 .

**concerning** 28:23, 44:20, 72:8 .

**concerns** 29:25 .

**conclude** 76:25 .

**concluded** 77:13 .

**concluded.** 72:10 .

**conclusion** 28:11 .

**conclusions** 26:14, 28:23 .

**concurrently** 76:9 .

**condition** 62:16 .

**conditionally** 3:13 .

**conditions** 69:25, 70:4, 73:3, 75:14, 75:15, 75:16 .

**conduct** 8:14, 9:3, 19:20, 20:5, 20:13, 23:11, 24:2, 24:14, 24:19, 31:20, 32:4, 32:7, 32:8, 34:18, 37:6, 37:16, 42:25, 45:6, 45:21, 46:12, 66:24, 67:3 .

**conference** 72:6, 72:8, 72:10 .

**confinement** 62:16 .

**confines** 66:5 .

**confirm** 42:10 .

**confusing** 76:11, 76:23 .

**Congress** 64:1 .

**connected** 28:10 .

**connection** 66:3 .

**consecutively** 76:8 .

**consider** 9:8, 10:18, 11:23, 11:24, 13:19, 13:20, 36:24, 37:1, 37:7, 37:12, 37:18, 68:25, 72:12 .

**consideration** 9:5, 34:24, 72:20 .

**considered** 28:3, 61:17, 63:5 .

**considering** 30:2, 64:24 .

**consistent** 11:4, 38:7, 38:8, 38:9 .

**Constitution** 45:12 .

**consultation** 70:13 .

**contact** 42:9, 59:17, 59:20 .

**contained** 8:5, 9:11, 74:1, 74:16, 74:20 .

**containing** 27:21 .

**content** 4:23 .

**contents** 4:11, 4:13 .

**contest** 31:8, 31:16, 33:24, 34:22 .

**contested** 15:9 .

**context** 31:7, 34:22, 60:25, 61:6 .

**continuation** 15:12 .

**continue** 16:14 .

**continued** 68:10 .

**contract** 44:5 .

**contradictory** 60:21, 60:22 .

**contrary** 60:7, 60:18, 60:19 .

**contribution** 61:25 .

**control** 51:4 .

**controlled** 69:24 .

**Conveniently** 40:12 .

**conversations** 52:3, 52:6, 53:14 .

**convert** 45:24 .

**converting** 40:18 .

**convicted** 11:10, 27:24, 29:13, 30:2, 60:16, 65:11 .

**conviction** 31:24, 32:5, 34:20, 36:3, 67:10 .

**convictions** 35:19 .

**convince** 9:21 .

**convincing** 25:9, 75:7 .

**cooperating.** 72:9 .

**cooperative** 50:25 .

**copy** 3:18 .

**Corps** 65:25 .

**Correct** 10:3, 10:7, 16:20, 23:16, 26:4, 41:13, 74:17, 74:18, 74:21, 77:16 .

**corrective** 37:9 .

**correctly** 29:7, 51:12 .

**Corso** 17:23, 18:7, 20:4 .

**counsel** 2:13, 2:17, 12:25, 33:5, 38:1, 55:25, 63:7, 72:1 .

**Count** 3:12, 13:14, 13:15, 13:21, 13:25, 14:1, 14:25, 17:3, 18:1, 21:21, 23:1, 23:3, 23:9, 24:10, 27:2, 28:15, 31:24, 34:10, 36:3, 40:11, 40:13, 40:25, 41:22, 61:9, 61:10, 74:20 .

**country** 45:11 .

**Counts** 20:21, 24:11, 24:15, 24:21, 27:6, 27:24, 28:3, 28:6, 28:7, 33:21, 40:10, 70:21, 74:10, 74:16 .

**County** 49:20, 49:24, 50:1, 50:23 .

**couple** 77:3 .

**course** 11:20, 20:4, 29:4, 40:20, 56:14 .

**Court** 1:1, 1:47, 2:3, 2:6, 2:9, 2:16, 2:20, 2:22, 2:25, 3:9, 3:22, 3:25, 4:5, 4:10, 4:13, 4:16, 4:19, 4:23, 5:1, 5:4, 5:14, 5:25, 6:18, 6:24, 7:13, 7:17, 7:21, 8:24, 9:5, 9:8, 9:9, 9:12, 9:14, 9:18, 9:22, 9:24, 10:7, 10:10, 10:11, 10:16, 10:18, 10:21, 10:22, 10:23, 11:3, 11:4, 11:6, 11:19, 11:20, 11:21, 11:22, 12:2, 12:14, 12:17, 12:21, 13:18, 14:25, 15:16, 15:19, 16:11, 16:14, 17:20, 18:10, 18:11, 19:6, 19:18, 23:3, 23:7, 23:15, 23:17, 24:8, 25:3, 25:4, 25:6, 25:24, 26:2, 26:5, 26:8, 26:11, 26:13, 29:1, 29:4, 29:6, 30:8, 31:3,

31:9, 32:21, 32:23, 32:25,
33:3, 33:5, 33:12, 33:15,
33:21, 33:23, 34:12, 34:15,
34:23, 35:15, 35:17, 35:18,
36:14, 36:18, 36:24, 37:1,
37:11, 37:18, 38:16, 39:20,
39:25, 46:25, 47:10, 47:13,
47:15, 47:21, 48:11, 48:16,
48:18, 48:23, 49:10, 49:13,
49:16, 49:19, 50:8, 50:9,
51:7, 51:21, 52:1, 52:9,
53:18, 53:24, 54:15, 54:16,
54:20, 54:22, 54:23, 55:8,
55:11, 55:16, 55:25, 56:5,
57:12, 58:14, 58:24, 59:3,
59:8, 61:20, 62:17, 62:20,
62:22, 62:25, 63:4, 63:9,
63:12, 63:14, 63:16, 63:22,
64:10, 64:12, 64:13, 64:17,
64:19, 64:21, 65:11, 65:15,
66:10, 66:12, 67:9, 67:22,
67:24, 68:3, 68:13, 69:4,
69:9, 69:14, 70:2, 70:19,
71:5, 71:8, 71:16, 71:17,
71:19, 71:21, 72:5, 72:7,
72:12, 72:16, 72:20, 72:22,
73:5, 73:9, 73:12, 73:20,
73:22, 74:5, 74:9, 74:15,
74:19, 74:23, 75:5, 76:16,
76:19, 76:22, 76:25, 77:2,
77:10, 77:11, 77:28 .
**courtroom** 77:7 .
**cover** 25:19 .
**craft** 60:9 .
**create** 14:23, 20:16, 41:14,
68:18 .
**created** 59:6 .
**creates** 48:5 .
**credit** 71:14 .
**crime** 7:13, 30:2, 62:11,
69:22 .
**crimes** 37:6, 68:13, 68:15 .
**Criminal** 1:9, 2:11, 8:14, 8:16,
11:6, 17:4, 18:3, 18:6, 25:12,
25:17, 25:20, 29:8, 31:19,
35:19, 35:20, 35:21, 35:23,
37:6, 48:9, 61:10, 62:10,
70:17, 70:24, 72:13 .
**CRR** 1:46, 77:15 .
**cumulative** 47:5, 48:25 .

**curious** 6:19 .
**current** 46:7 .
**curse** 43:23, 44:3, 46:18 .
**custody** 69:15, 69:18 .
**cut** 61:14 .
**cuts** 66:1, 66:7 .

.

.
**< D >** .
**D.** 1:22, 2:4, 47:11 .
**danger** 55:3, 67:12, 68:15,
75:9 .
**dangerous** 38:18, 38:20, 39:19,
39:21, 40:4, 41:9, 42:12,
43:11, 43:24, 67:15,
69:23 .
**data** 39:6 .
**date** 37:13, 75:17, 76:1 .
**Dated** 22:18, 26:15, 77:20 .
**daughter** 48:14 .
**David** 1:37, 2:13, 49:6 .
**DAVIS** 55:13, 55:16, 55:20,
55:23, 56:3, 56:6, 56:8, 57:3,
57:5, 57:7, 57:10, 57:14,
57:21, 57:23, 58:9, 58:12,
58:18, 58:21 .
**day** 22:1, 27:16, 45:14, 46:6,
77:20 .
**days** 62:19, 74:5 .
**dealer** 15:5, 60:23, 61:3,
61:12 .
**dealing** 38:21 .
**debt** 71:11 .
**December** 7:4, 14:3, 14:5, 14:8,
15:7, 16:3, 16:7, 16:22,
61:19 .
**decide** 21:1, 47:17 .
**decides** 57:12, 62:17 .
**decision** 10:6, 63:23 .
**decision-making** 36:21 .
**declines** 69:5 .
**decrease** 29:22, 31:13, 34:14,
35:5, 35:12 .
**decreases** 35:16 .
**dedicated** 60:9 .
**deduction** 10:19, 35:2 .
**deem** 38:2 .
**deeper** 41:20 .
**DEFENDANT** 1:12, 1:32, 3:4,
3:7, 4:9, 4:12, 4:15, 4:18,

5:7, 5:11, 5:16, 6:1, 6:3, 8:25,
9:7, 9:16, 9:19, 9:24, 10:24,
13:8, 19:9, 25:22, 26:21,
26:24, 27:23, 31:15, 31:17,
32:7, 34:16, 35:8, 37:2, 37:7,
37:8, 37:14, 37:24, 43:18,
44:17, 49:17, 50:9, 56:4,
56:7, 59:8, 63:24, 64:11,
64:16, 64:20, 65:10, 65:20,
68:1, 68:13, 69:13, 69:15,
69:17, 69:19, 69:20, 71:9,
71:12, 71:17, 71:19, 71:22,
72:1, 72:3, 72:9, 73:9, 75:13,
75:17 .
**defendants** 24:3, 37:15, 44:18,
59:6 .
**defense** 2:16, 14:1, 19:14, 21:3,
21:17, 25:16, 76:16 .
**deferred** 10:22 .
**definition** 39:16 .
**degree** 69:2 .
**demonstrating** 22:6 .
**demonstrations** 65:23 .
**demos** 15:25, 16:18, 18:22,
19:4 .
**denying** 32:6 .
**Department** 50:1, 52:25 .
**departments** 44:6, 65:25 .
**depend** 41:6, 41:7 .
**depicts** 65:12 .
**describe** 60:19 .
**described** 26:18, 29:14, 70:21,
70:25 .
**describing** 39:2, 42:3 .
**deserve** 58:19 .
**design** 14:23, 58:7, 59:25 .
**designated** 75:22 .
**designates** 73:4 .
**designed** 18:21, 34:5,
57:24 .
**designing** 57:25, 59:19,
65:22 .
**desire** 13:1 .
**detail** 57:19 .
**determine** 70:9 .
**determined** 47:10 .
**determining** 36:25, 37:22 .
**deterrence** 37:5, 45:7, 46:11,
46:12, 68:2, 68:4 .
**device** 69:23 .

84

difference 16:23, 34:2,
34:3 .
different 17:9, 17:10, 17:14,
17:15, 24:21, 30:23, 34:6,
38:13, 43:1, 43:22, 44:13,
45:3, 45:14, 48:9, 60:2,
61:21, 62:8, 62:10 .
difficult 48:5 .
difficulty 30:17 .
direction 59:8 .
directives 59:8 .
directly 18:7, 60:18 .
disadvantageous 21:14 .
disagree 4:22, 7:5, 13:24, 25:10,
33:9, 33:16, 42:2, 47:24,
48:1 .
disclose 71:12 .
discovered 28:16 .
discuss 4:11, 5:19 .
discussed 4:1, 57:4, 71:25 .
discussing 10:13, 61:18 .
discussion 32:25, 33:1 .
dismiss 20:22, 74:6, 74:10 .
dismissed 74:14, 74:16 .
disparities 37:15 .
disposal 70:25 .
disproving 32:14 .
dispute 7:10, 7:15, 24:14,
24:25 .
disrespect 59:12 .
distributed 12:10 .
DISTRICT 1:1, 1:2, 36:24,
69:20, 75:16 .
dive 41:19 .
DIVISION 1:3 .
documentary 42:23 .
doing 8:22, 16:1, 17:22, 19:2,
32:24, 40:20, 51:12, 57:18,
60:1, 61:4 .
done 18:25, 43:2, 62:4,
64:4 .
down 19:22, 20:20, 33:20, 35:3,
39:16, 40:9, 41:12, 49:24,
56:24 .
downward 65:2, 68:22 .
draft 3:20, 3:23, 5:5, 6:2 .
draw 22:17, 40:21, 56:20,
56:21 .
drew 56:17 .
due 71:7, 71:20 .

During 6:3, 8:25, 77:2 .
.
.
< E > .
earlier 29:25 .
education 65:17 .
educational 37:8 .
effect 37:13 .
effective 37:10 .
either 18:15 .
element 12:22, 21:10,
21:18 .
elements 19:17, 21:4, 26:20,
27:25, 34:19, 43:11 .
Eleven 39:11 .
employ 71:10, 71:23 .
employed 16:24, 22:19 .
employee 14:16 .
employer 18:16, 40:12 .
employment 27:12, 65:20,
66:1 .
encompassed 8:15 .
encountered 43:18 .
encouraging 59:9 .
end 10:4, 20:11, 38:9, 44:24,
75:19 .
ends 31:5 .
enforcement 34:5, 59:9, 59:10,
59:21, 60:10 .
engaged 46:15 .
engaging 42:25 .
engineered 64:4 .
Engineering 14:10, 15:3, 15:6,
15:13, 15:22, 15:24, 16:19,
16:24, 17:1, 18:17, 18:19,
19:3, 52:4, 52:21, 53:5,
53:12, 60:6 .
enhancement 5:18, 7:6, 7:7,
7:19, 9:17, 9:20, 9:22, 9:23,
9:25, 10:2, 10:6, 12:4, 12:12,
17:17, 18:4, 18:9, 23:11,
25:25, 26:1, 26:10, 28:24,
34:25, 35:1, 36:20 .
enough 62:24 .
enter 35:10 .
entered 17:15 .
entire 25:1, 42:15, 45:5, 74:13,
74:15, 74:16 .
entirely 30:7, 43:22 .
entitled 33:18, 34:8 .

entry 3:15, 74:5 .
enumerated 11:24 .
episode 28:12 .
equal 59:6 .
equates 21:12 .
errors 45:13 .
Esquire 1:27, 1:28, 1:34 .
establish 22:13 .
established 69:7 .
establishes 27:22, 35:21 .
evaluate 71:15 .
eventually 50:6 .
everybody 30:22, 55:1,
59:7 .
Everything 9:5, 18:24, 51:12,
54:3, 58:15, 60:12, 62:3,
64:5, 64:7 .
evidence 31:16, 32:11, 33:10,
34:22, 42:23, 75:8 .
exact 43:15 .
exactly 16:22 .
exception 48:11 .
exceptions 43:14 .
excessively 47:5 .
excusing 60:24 .
exhibit 15:18 .
expect 77:8 .
expected 66:4 .
expel 38:22, 38:24 .
experience 50:10, 50:17,
59:7 .
expert 44:4, 53:9, 67:20,
68:6 .
expertise 45:19, 46:15,
66:10 .
explain 31:7, 32:24 .
extend 21:7 .
extended 65:14 .
extent 68:23, 71:8, 71:20, 73:10,
73:14 .
extreme 68:24 .
extremely 67:9, 67:11 .
.
< F > .
facilitate 66:20 .
facility 73:10, 73:14 .
fact 5:14, 9:6, 9:14, 14:5, 14:16,
16:4, 16:9, 16:15, 16:20,
18:17, 20:15, 21:9, 22:13,

24:14, 26:14, 30:4, 31:8, 32:11, 32:15, 39:17, 42:18, 45:4, 45:8, 47:14, 48:1, 48:6, 59:14, 60:9, 68:6 .

**factor** 36:21, 38:14 .

**factors** 11:24, 23:25, 36:24, 37:22, 38:2, 47:2, 59:4, 61:21, 63:10, 64:25, 69:8 .

**facts** 6:2, 6:5, 6:8, 6:10, 6:11, 6:15, 6:16, 8:2, 8:5, 8:9, 8:16, 8:20, 8:25, 10:14, 13:10, 19:8, 19:23, 21:9, 22:17, 24:16, 27:3, 27:18, 31:21, 32:10, 32:13, 32:19, 32:20, 33:16, 34:9, 41:21, 44:8, 44:20 .

**factual** 5:7, 5:17, 6:5, 6:10, 8:3, 9:13, 10:11, 19:9, 30:3 .

**factually** 6:1 .

**fail** 75:21 .

**fair** 60:15 .

**fall** 26:17, 33:11, 47:11, 53:15 .

**falls** 36:5 .

**falsely** 32:6 .

**familiar** 53:4 .

**family** 65:14, 65:15, 73:11 .

**far** 4:23, 14:5, 14:8, 16:7, 16:15, 51:11, 59:21, 62:5 .

**father** 65:18 .

**favor** 65:2 .

**FBI** 39:6 .

**fearful** 44:1 .

**February** 57:2, 72:25 .

**Federal** 1:47, 11:5, 11:12, 14:4, 14:6, 14:9, 16:5, 16:8, 16:16, 30:24, 41:5, 52:5, 53:12, 60:2, 60:3, 65:24, 69:22, 70:17, 71:14 .

**felon** 60:16 .

**felony** 76:4 .

**few** 38:7 .

**few-year** 39:11 .

**FFL** 14:18, 22:4, 22:22, 41:25, 42:7, 42:8, 42:10, 42:22, 53:16, 53:21, 54:1, 54:11 .

**Ffls** 44:6 .

**figure** 41:9 .

**file** 74:4 .

**filed** 3:12, 5:7, 5:10, 5:12, 37:24, 63:6, 71:3, 75:15 .

**final** 3:20, 3:23, 6:4, 10:5, 10:22, 22:9 .

**Finally** 44:11, 51:6, 62:6, 71:19 .

**financial** 71:13 .

**find** 18:8, 20:9, 34:7, 42:5, 50:19, 58:3, 65:3, 65:4, 75:7 .

**finding** 17:21 .

**findings** 9:14, 26:14, 28:23, 30:4, 63:9 .

**finds** 8:24, 9:9, 25:24, 26:11, 29:6, 34:13, 34:15, 35:17, 35:18, 59:8, 66:10, 66:12, 67:9, 67:24, 69:9, 71:9, 71:16, 71:21 .

**fine** 11:15, 36:1, 36:8, 36:9, 62:18, 62:20, 71:5, 71:6, 71:7, 75:23 .

**finish** 47:24 .

**firearm** 3:10, 11:11, 19:16, 21:25, 22:2, 23:1, 23:19, 26:20, 26:21, 26:22, 26:24, 27:2, 27:14, 28:1, 28:14, 29:14, 31:24, 31:25, 39:8, 39:12, 40:17, 41:14, 42:6, 42:11, 43:1, 45:25, 60:2, 66:19, 66:21, 69:23 .

**Firearms** 12:5, 12:8, 12:9, 12:15, 12:18, 12:20, 13:9, 13:17, 14:4, 14:6, 14:10, 16:6, 16:8, 16:17, 19:12, 21:19, 21:22, 22:7, 22:22, 23:10, 23:21, 24:20, 24:22, 26:16, 26:17, 27:5, 27:7, 27:9, 27:11, 27:15, 27:16, 27:19, 28:2, 28:13, 28:16, 28:17, 29:16, 30:24, 34:25, 36:20, 38:16, 38:18, 39:15, 40:18, 41:3, 41:5, 41:7, 41:17, 42:22, 43:19, 43:21, 44:4, 44:19, 44:22, 45:13, 45:20, 46:10, 46:17, 48:5, 52:5, 53:9, 53:12, 58:2, 58:5, 60:3, 65:22, 66:4, 66:13, 66:14, 66:16, 66:18, 67:4, 67:5, 67:20, 68:6, 68:7, 68:8,

68:11, 68:19, 70:20, 70:21 .

**firmly** 32:18 .

**First** 6:12, 8:8, 13:2, 15:2, 21:11, 23:8, 30:19, 31:13, 38:7, 38:13, 38:21, 44:9, 50:3, 65:11, 75:21 .

**fit** 50:18 .

**FJB** 14:10, 14:17, 14:20, 14:23, 15:3, 15:6, 15:13, 15:22, 15:24, 16:19, 16:24, 17:1, 18:17, 18:18, 19:3, 52:4, 52:21, 53:4, 53:12, 60:6 .

**flee** 75:9 .

**Floor** 1:48 .

**focus** 13:15 .

**follow** 70:6, 70:11 .

**followed** 65:5 .

**following** 11:12, 26:13, 65:8, 70:4 .

**follows** 35:24 .

**foregoing** 77:16 .

**forfeiture** 70:17, 70:20, 70:24, 71:3 .

**form** 47:9 .

**former** 67:19, 68:5 .

**forms** 41:6, 72:25 .

**forth** 13:10, 23:12, 66:24, 75:14 .

**found** 7:4, 25:10, 29:10, 30:21, 33:21, 37:16, 41:3, 67:5 .

**four** 12:7, 17:17, 21:4, 24:20, 24:21, 24:22, 29:17, 48:15, 74:16 .

**four-level** 7:6, 7:7, 9:17, 12:3, 18:4, 26:10, 26:11, 34:25, 36:19 .

**four.** 28:21 .

**framework** 21:2 .

**Frank** 53:8, 53:22, 53:24, 53:25, 60:6 .

**frankly** 21:23, 22:15, 61:22 .

**Freed** 43:9 .

**frequently** 54:8 .

**friend** 42:10, 50:13, 54:13 .

**friends** 65:14 .

**full** 3:5, 8:17, 49:4, 52:10, 56:10, 57:19, 62:11 .

**fuller** 6:14 .

**fully** 7:14, 8:13, 9:5, 30:9, 30:15, 38:21, 39:8, 39:12, 39:18, 71:10, 71:23 .
**future** 66:9 .
.
.
**< G >.**
**G.** 1:46, 77:15, 77:27 .
**gained** 65:17 .
**Gall** 47:12, 47:14, 47:16 .
**gave** 15:4, 53:8, 61:2, 61:11, 61:13, 61:14 .
**GED** 65:17 .
**general** 49:22, 68:17 .
**generally** 23:19, 25:19, 43:19, 64:21 .
**gentle** 50:11, 57:23, 60:20 .
**germane** 8:5 .
**get-go** 19:13 .
**gets** 32:9, 45:1 .
**getting** 40:1, 40:2, 40:23, 40:24, 44:22 .
**gifts** 57:14 .
**give** 6:14, 31:3, 42:6, 43:12, 45:24, 47:18, 54:23, 62:25, 64:13, 64:23 .
**given** 6:20, 29:25, 35:22, 39:4, 46:14, 67:18, 67:25, 68:24, 69:11, 73:11 .
**gives** 56:10 .
**giving** 41:25 .
**God** 57:14 .
**God.** 30:22 .
**gold** 58:20 .
**gotten** 32:13 .
**Government** 2:7, 5:9, 5:19, 5:22, 7:22, 8:8, 10:1, 12:11, 12:15, 12:21, 13:18, 14:7, 17:9, 17:11, 18:1, 19:18, 23:8, 24:9, 28:22, 31:11, 31:16, 32:9, 32:18, 34:20, 35:11, 35:13, 36:11, 38:4, 38:5, 38:25, 39:15, 40:13, 41:5, 45:8, 47:25, 59:11, 60:8, 60:20, 62:9, 63:11, 64:1, 68:3, 68:14, 70:15, 70:19, 71:2, 72:1, 72:16, 75:2, 76:13, 76:14 .
**graft** 20:8 .
**Grandmom.** 57:19 .

**grandmother** 48:13, 48:18 .
**grandparents** 65:14 .
**grandson** 55:17, 57:12, 58:17 .
**granted** 71:4 .
**grants** 74:9 .
**great** 68:17 .
**greater** 35:7, 38:11, 46:23, 67:18, 69:10 .
**grounds** 10:24 .
**group** 23:19, 23:21, 28:8, 45:10, 64:5 .
**grouped** 13:11 .
**grouping** 23:11 .
**guess** 5:16, 23:10, 64:7 .
**Guideline** 4:24, 5:18, 7:12, 9:17, 11:23, 12:8, 13:7, 17:7, 19:5, 26:11, 28:4, 29:8, 29:9, 31:3, 32:3, 35:22, 35:24, 36:4, 37:20, 37:21, 47:10, 64:24, 65:4, 65:6, 68:24 .
**Guidelines** 11:3, 11:19, 11:21, 12:1, 12:6, 12:22, 13:7, 17:18, 17:19, 20:7, 20:9, 20:22, 23:21, 24:19, 25:19, 25:23, 27:20, 28:8, 28:9, 28:20, 29:11, 29:20, 30:18, 32:3, 34:13, 35:11, 36:6, 36:8, 38:9, 38:10, 47:13, 47:14, 47:17, 47:22, 64:21, 68:21, 69:5, 69:6, 69:9 .
**guilty** 3:10, 3:15, 7:1, 12:20, 13:8, 13:14, 13:21, 13:25, 15:1, 19:19, 19:23, 23:3, 23:9, 24:4, 24:10, 24:11, 27:1, 28:3, 34:17, 35:10, 37:16, 61:10, 72:7, 74:12, 74:21 .
**guitar** 57:17 .
**Gun** 15:4, 15:5, 15:23, 19:16, 21:4, 21:6, 21:8, 21:9, 38:22, 44:17, 44:18, 45:15, 46:1, 46:2, 61:6, 61:12, 61:15, 61:16, 61:17, 66:1 .
**guns** 16:21, 17:11, 18:2, 22:20, 22:21, 30:21, 34:4, 34:5, 39:17, 39:18, 40:15, 44:13, 68:17 .
**guy** 51:2, 54:25, 55:2, 61:4 .
.

.
**< H >.**
**hand** 3:3, 56:3, 63:21 .
**Handbook** 27:14 .
**handguns** 46:9 .
**handle** 58:2 .
**hands** 41:8 .
**hanging** 56:18 .
**happen** 42:16 .
**happened** 31:17, 31:20, 39:5, 53:18, 56:23, 66:17 .
**happens** 14:9, 14:16, 34:3, 59:15 .
**happier** 61:22 .
**happy** 63:23 .
**hard** 42:5 .
**harder** 22:15 .
**harm** 23:22, 39:2 .
**harmful** 40:20 .
**harp** 43:20 .
**head** 56:12, 57:15, 57:16, 57:17 .
**health** 65:18, 70:10, 70:11 .
**hear** 29:23, 34:2, 47:6, 47:7, 57:17, 63:23 .
**heard** 51:17 .
**HEARING** 1:21, 8:4, 10:22, 70:15, 73:25, 75:19, 77:1 .
**hears** 57:16 .
**heart** 8:13, 58:20 .
**heartily** 45:13 .
**held** 7:11, 20:13, 61:13 .
**Helen** 55:13 .
**help** 9:21, 56:19, 58:4, 58:10, 60:11 .
**helping** 59:9 .
**hereby** 77:15 .
**high** 58:11 .
**highest** 38:17, 73:2 .
**highly** 25:12, 38:18, 38:19, 41:14, 46:10, 67:15 .
**hired** 52:24 .
**History** 29:8, 35:19, 35:20, 35:21, 35:23, 37:2, 43:17, 65:9, 65:12, 65:20, 66:1, 68:1 .
**hit** 8:13 .
**hitting** 39:21 .
**Hodge** 23:24 .

hold 22:21, 24:24, 41:11, 42:8, 43:15, 56:3, 60:17, 63:20 .
holding 21:8, 24:3, 25:22 .
holdover 15:11 .
holds 43:24 .
home 22:6, 22:21, 45:3, 50:13, 62:16, 67:4 .
honestly 54:2 .
Honor 2:8, 2:13, 2:18, 2:24, 3:21, 4:3, 4:9, 4:18, 4:21, 5:24, 6:7, 6:23, 8:1, 10:4, 10:8, 10:20, 11:18, 13:3, 13:13, 14:11, 15:2, 15:13, 15:15, 16:13, 16:20, 17:2, 19:7, 25:5, 25:8, 26:4, 26:7, 28:25, 29:3, 30:7, 31:5, 32:17, 32:23, 33:24, 35:14, 36:13, 36:17, 38:5, 46:24, 47:9, 47:23, 48:10, 48:20, 48:21, 49:2, 49:3, 49:12, 51:25, 55:9, 56:4, 59:2, 59:5, 62:15, 63:2, 63:13, 63:24, 64:8, 64:16, 64:18, 72:4, 72:11, 72:18, 72:23, 73:17, 74:8, 74:18, 74:22, 75:4, 76:15, 76:21, 76:24 .
Honorable 1:22, 2:3, 2:4, 77:11 .
hope 32:23 .
hoped 9:21 .
hours 62:17, 69:18 .
house 14:3, 16:2, 25:10, 30:21, 34:4, 39:24 .
huge 45:10 .
hurt 39:10 .
husband 56:15, 56:16, 56:19 .
  .

< I > .
Ian 1:10, 2:10, 3:7 .
idea 40:25, 42:17, 60:21, 60:22, 62:6 .
identifiable 71:16 .
identified 28:14, 47:14 .
identifies 26:16 .
iffy 32:9 .
ignorance 44:11, 44:14 .
illegal 17:22, 31:8, 66:18 .

illegally 18:3 .
immediately 71:7, 71:8, 71:20, 71:21 .
immense 67:13 .
impact 51:8 .
important 45:8, 45:9, 45:12 .
impose 11:7, 63:22, 75:22, 76:3 .
imposed 37:3, 72:2, 73:7, 76:2 .
imposes 63:12, 63:16, 71:5 .
impossible 47:16, 47:18 .
impression 53:20, 54:4 .
imprisonment 11:8, 11:13, 35:25, 38:6, 65:5, 67:23, 67:25, 68:3, 69:3, 69:8, 76:5, 76:7 .
improper 33:5 .
in. 23:20, 23:23 .
inaccurate 59:13 .
inappropriate 8:22 .
incapable 44:7 .
incidents 39:5, 44:13 .
include 10:12, 12:22, 12:23, 29:16, 72:8 .
included 6:4, 6:22, 9:1, 9:3, 9:23, 24:21, 30:3 .
includes 65:20 .
including 6:2, 65:2, 65:24 .
income 71:14 .
increase 26:12, 28:20, 40:5 .
increased 67:16 .
increases 12:6, 41:1, 41:16, 41:17 .
incredibly 45:11 .
independently 38:11 .
indicates 74:25 .
indicating 66:23 .
indication 60:7 .
indicative 22:11 .
indicia 9:9 .
Indictment 3:12, 7:8, 13:13, 17:10, 17:16, 19:24, 20:8, 22:21, 24:21, 26:15, 27:2, 27:6, 28:15, 33:17, 61:11, 70:22, 74:7, 74:11, 74:13, 74:15, 74:16 .
individual 65:12 .
indulgence 25:4 .

ineligible 36:5, 68:20 .
infant 56:14 .
inference 40:21 .
information 7:23, 9:10, 9:20, 10:12, 14:6, 61:10, 64:22, 64:23, 74:13, 74:20 .
informed 16:16, 53:21 .
initially 6:1, 9:19, 32:25 .
instance 20:11 .
instead 8:17, 9:20, 17:7, 22:16 .
institution 75:12 .
instructed 37:11 .
instructs 37:18 .
intended 6:14 .
intent 18:5, 62:11, 70:16 .
intention 24:23, 35:10 .
intentions 62:12 .
interested 16:17 .
interesting 13:4 .
interview 6:4, 9:1 .
introduce 52:2 .
introduction 47:10, 47:24 .
investigation 3:14, 3:17, 3:19, 5:5, 5:6, 5:20, 5:23, 6:22, 9:2, 9:7, 9:11, 9:12, 9:23, 12:11, 29:7, 35:8, 53:20, 63:6, 66:25 .
investigator 2:21 .
involved 12:5, 12:7, 12:15, 19:3, 28:17, 29:14, 29:16, 38:16, 45:1, 46:17, 70:20 .
involves 32:5 .
irrelevant 8:9 .
issue 49:15 .
issued 37:12, 67:6 .
issues 50:8, 51:6, 54:22, 63:24 .
item 72:23 .
items 14:21, 15:3 .
itself 15:8, 31:3, 42:12, 66:19 .
  .

< J > .
jail 51:7, 51:9, 51:13, 62:5 .
James 1:10, 2:10, 3:7 .
Jim 14:17, 16:18, 50:3, 50:24, 51:4, 51:11, 53:21, 53:23, 54:1, 54:2, 56:3, 56:16,

56:17, 56:19, 56:21 .
**job** 14:22, 15:3, 15:24, 18:25, 19:2, 30:24, 39:1, 52:23, 60:1, 65:21 .
**joined** 2:13 .
**Judge** 10:6, 34:11, 52:2, 76:18 .
**judgment** 10:22, 11:3, 69:14, 71:12, 74:5 .
**Judy** 1:38, 2:23 .
**jump** 19:13, 25:20 .
**June** 15:23, 16:5, 16:21, 18:14, 22:18 .
**jury** 34:7 .
**justice** 31:19 .
**justification** 69:1 .
.
.
**< K >.**
**Kahan** 1:38, 2:23 .
**Kathleen** 55:14 .
**keep** 39:14, 57:15 .
**kept** 16:1 .
**killed** 39:11 .
**kind** 20:18, 46:13, 52:25, 56:12, 58:21 .
**kind-hearted** 60:20 .
**kinds** 37:19 .
**Kleenex** 55:25 .
**knowing** 7:9, 17:4, 21:5, 21:7, 34:1, 34:7, 44:8, 68:7 .
**knowingly** 13:16, 13:21, 26:21, 27:5, 75:21 .
**knowledge** 12:22, 12:23, 16:8, 17:22, 17:23, 53:11, 68:9 .
**known** 24:19, 52:18, 56:14 .
**knows** 46:20, 52:7 .
.
**< L >.**
**L-e-w-i-s** 49:6 .
**L.** 49:6 .
**lack** 72:13 .
**language** 6:21, 20:1, 20:2, 20:8, 20:24 .
**large** 39:10, 45:18, 64:5 .
**largely** 39:9 .
**last** 57:2, 57:8, 59:1, 59:2, 60:18, 72:25 .

**late** 14:18 .
**later** 19:10, 22:11, 47:8 .
**laundering** 42:11 .
**law** 8:9, 11:12, 18:18, 18:19, 18:20, 18:21, 21:12, 21:16, 26:14, 33:20, 34:5, 37:4, 43:13, 44:11, 46:20, 59:9, 59:21, 60:10, 65:16, 65:22, 66:5, 66:6, 67:8, 67:23, 68:10, 71:11 .
**law-abiding** 46:5, 61:25 .
**lawful** 20:16, 40:17, 42:7, 42:12 .
**lawfully** 27:12, 42:21 .
**laws** 64:2 .
**lawyer** 4:11 .
**layout** 56:18 .
**layouts** 56:19 .
**lead** 21:9 .
**learning** 56:23 .
**least** 21:7, 21:20, 23:1, 32:18, 34:24, 51:3 .
**leave** 32:17, 74:6 .
**led** 16:9, 28:15 .
**left** 2:19, 10:6, 66:15, 76:10, 76:15 .
**legal** 5:7, 9:24, 14:21, 15:1, 15:12, 16:4, 16:6, 21:2, 31:24, 45:25, 46:2 .
**legally** 38:18, 44:8 .
**less** 59:18 .
**letter** 14:20, 51:21, 51:22, 54:15, 58:16 .
**letters** 5:13, 55:17, 60:19 .
**level** 12:7, 13:8, 18:5, 28:21, 29:5, 29:6, 29:8, 29:12, 29:13, 29:17, 29:18, 31:18, 35:3, 35:5, 35:6, 35:16, 35:17, 35:23, 36:5, 73:2 .
**levels** 17:18, 29:17, 34:9 .
**LEWIS** 49:3, 49:6, 49:8, 49:10, 49:19, 49:23, 50:3, 50:6, 50:11, 50:21, 51:10, 51:15, 51:17, 51:20, 51:21, 51:24, 53:17 .
**liability** 17:14, 25:13, 25:17, 25:22, 26:2, 30:12, 33:8, 43:8, 43:10, 48:8, 62:7, 62:10, 67:11 .
**license** 14:4, 14:6, 14:10, 16:6,

16:8, 16:9, 16:17, 30:24, 52:6, 53:12, 54:5, 60:3, 60:6 .
**license.** 14:14 .
**licensed** 15:5 .
**licenses** 60:2 .
**life** 31:5, 45:19, 50:12, 60:19, 64:3, 65:16, 77:3, 77:6 .
**light** 61:23, 72:13 .
**likely** 20:6, 40:23, 75:9 .
**line** 21:23, 41:12 .
**listed** 27:2, 27:5 .
**listening** 58:23 .
**literally** 19:23 .
**litigation** 71:13 .
**little** 7:19, 20:18, 22:8, 41:20, 43:23, 50:24, 57:5, 59:13 .
**lived** 55:21, 65:16 .
**livelihood** 45:19 .
**living** 49:9, 49:18, 51:11, 57:1 .
**local** 65:18, 69:22 .
**locations** 59:22 .
**Lombard** 1:48 .
**long** 48:25, 52:18 .
**longer** 14:13, 16:23, 19:2, 22:19, 60:17 .
**look** 16:12, 18:11, 19:17, 19:25, 20:4, 23:22, 23:23, 23:25, 25:18, 38:14, 39:14, 48:21, 61:20, 61:23 .
**looked** 56:24 .
**looking** 40:7, 40:8, 54:20 .
**looks** 48:24, 59:14 .
**loopholes** 45:1 .
**losing** 34:9 .
**lot** 22:8, 32:13, 41:20, 43:14, 46:16, 57:23 .
**loud** 59:18 .
**love** 65:13 .
**low** 25:21 .
**luck** 77:8 .
.
**< M >.**
**ma'am** 3:24, 15:21, 33:14, 62:21 .
**Machine** 15:23, 19:16, 21:4, 21:5, 21:8, 21:9, 30:21, 34:4,

38:22, 39:18, 61:5, 61:15, 61:16, 61:17, 68:16 .
**maintain** 10:2, 46:6 .
**male** 65:10 .
**malicious** 62:13 .
**man** 31:4, 47:18, 59:24, 60:8 .
**mandatory** 17:20, 36:2, 47:13 .
**manner** 37:10 .
**manufacture** 14:23 .
**manufactured** 27:17, 46:7 .
**manufacturer** 18:21, 21:24, 41:11 .
**manufacturers** 27:14 .
**manufacturing** 22:5, 44:18, 66:8, 67:20 .
**Marine** 65:25 .
**Marshal** 75:13 .
**Marshals** 75:18, 75:22 .
**Mary** 55:13, 55:14 .
**Maryland** 1:2, 1:16, 1:49, 49:24, 52:17 .
**material** 9:6, 30:3 .
**materials** 45:24 .
**matter** 77:18 .
**matters** 9:13, 10:11 .
**maximum** 11:12, 36:9, 71:6 .
**Mckenna** 15:4, 15:5, 61:12, 61:13 .
**Mclane** 1:28, 2:12 .
**mean** 15:19, 48:7, 62:12 .
**means** 38:23 .
**meant** 16:17, 77:4 .
**mechanical** 1:40 .
**medical** 37:9 .
**meet** 19:14, 46:23 .
**meets** 20:24 .
**memo** 8:11 .
**memoranda** 5:7, 9:25, 15:20, 40:3 .
**memorandum** 5:10, 5:11, 21:18, 32:15, 39:1 .
**mental** 70:10, 70:11 .
**mention** 32:16 .
**mentioned** 41:19, 53:23, 54:1, 77:3 .
**message** 46:11 .
**met** 45:22, 50:3, 50:12,

52:16 .
**metal** 59:20 .
**military** 44:5, 59:10, 59:21, 60:10 .
**military-style** 39:22 .
**mind** 16:11 .
**minimum** 36:2 .
**minute** 15:14, 17:11, 73:6 .
**minutes** 39:11, 39:12 .
**misconduct** 35:9 .
**misdemeanor** 76:6 .
**mistake** 21:12, 76:11 .
**misunderstanding** 43:5, 43:13 .
**Mitchell** 1:46, 77:15, 77:27 .
**moment** 48:21 .
**Monday** 75:19 .
**money** 16:19 .
**Montgomery** 49:24 .
**month** 61:13 .
**months** 11:8, 17:19, 18:11, 25:21, 35:25, 38:6, 46:22, 47:15, 57:9, 62:16, 65:5, 68:25, 69:7, 69:16 .
**MOORE** 1:27, 2:8, 2:10, 2:11, 5:24, 7:21, 8:1, 19:6, 19:7, 19:21, 23:5, 23:14, 23:16, 23:18, 24:12, 25:3, 25:4, 25:8, 26:6, 28:22, 28:25, 31:14, 33:10, 35:14, 36:11, 36:13, 38:4, 38:5, 40:1, 48:2, 49:13, 49:14, 59:12, 63:11, 63:13, 72:18, 74:7, 74:8, 74:12, 74:18, 74:22, 75:4, 76:14 .
**motion** 35:11, 35:13, 71:3, 74:6, 74:9 .
**moved** 56:24, 70:19, 71:2 .
**MS** 52:12, 52:14, 52:16, 52:19, 52:22, 52:24, 53:3, 53:6, 53:8, 53:13, 53:19, 53:25, 54:7, 54:9, 54:12, 54:14, 54:17, 54:19, 54:25, 55:4, 55:6, 55:13, 55:14, 55:20, 55:23, 56:3, 56:6, 56:8, 57:3, 57:5, 57:6, 57:7, 57:10, 57:14, 57:20, 57:21, 57:22, 57:23, 58:6, 58:9, 58:11, 58:12, 58:18, 58:19, 58:21, 58:23 .

**multiple** 53:22 .
**music** 57:16, 57:17 .
**mutual** 24:17 .
.

.
**< N >** .
**name** 3:5, 49:4, 52:10, 53:8, 54:21 .
**names** 55:12 .
**National** 26:17, 27:9, 66:13 .
**nature** 37:1, 47:25, 62:4, 66:11, 66:24, 67:14, 68:15, 77:5 .
**necessarily** 6:13, 7:16, 41:10, 47:24, 48:4 .
**necessary** 38:12, 46:23, 67:23, 68:4, 69:11 .
**need** 26:24, 37:3, 37:7, 37:14, 37:16, 41:9, 41:11, 48:16, 55:18, 62:8, 63:1, 67:7, 67:24, 68:2, 68:12 .
**needed** 37:8 .
**negotiated** 24:15 .
**negotiation** 20:19, 24:16 .
**neither** 42:7 .
**Nest** 15:23 .
**Next** 27:16, 55:9 .
**NFA** 20:5, 21:15, 21:16, 22:16, 31:25, 40:19, 43:7 .
**nice** 51:2, 51:5 .
**No.** 1:9, 26:7, 29:3, 49:11, 64:18, 76:18 .
**nonaggressive** 50:18 .
**none** 22:25, 27:9, 27:12, 58:19 .
**nonetheless** 67:11 .
**nonstarter** 43:15 .
**Normally** 43:18 .
**NORTHERN** 1:3 .
**note** 2:17, 9:24, 12:8, 31:22, 32:1, 36:7, 36:8, 61:8, 64:12 .
**noted** 29:4, 37:23, 68:18, 69:5 .
**notes** 44:16 .
**Nothing** 22:22, 25:4, 32:14, 36:13, 45:23 .
**notice** 24:25, 70:16, 74:4 .
**noticed** 56:22 .

notified 75:12 .
notifying 35:9 .
notwithstanding 38:10 .
nowhere 24:5 .
Number 2:11, 12:5, 29:16,
    39:14, 40:7, 41:2, 44:22,
    46:16, 46:17 .
numbers 22:20, 39:4 .
numerous 43:5 .
.
.
< O > .
oath 3:2, 49:10 .
obey 66:5 .
object 8:19, 75:3 .
objected 6:1 .
objecting 9:19 .
objection 5:17, 5:18, 6:5, 7:18,
    9:16, 9:17, 10:2, 13:2, 26:9,
    29:4, 75:4 .
objections 5:2, 5:19, 5:23,
    30:14 .
observations 8:2 .
obtain 68:19, 71:13 .
obtained 12:10, 65:17 .
obvious 38:15 .
Obviously 8:8, 24:24, 31:23,
    32:9, 59:5, 72:19 .
occurs 24:5 .
October 41:22, 43:2 .
oddly 47:14 .
offense 7:1, 7:24, 8:6, 9:3,
    10:25, 12:4, 12:5, 12:6, 12:7,
    12:16, 17:14, 19:15, 20:5,
    25:13, 26:12, 28:17, 28:21,
    29:5, 29:6, 29:7, 29:12,
    29:14, 29:15, 29:16, 29:17,
    29:18, 34:16, 34:18, 34:19,
    35:2, 35:5, 35:6, 35:16,
    35:17, 35:23, 36:5, 37:2,
    37:4, 37:5, 37:17, 38:14,
    38:15, 41:2, 41:16, 41:18,
    47:25, 48:6, 48:8, 48:9,
    60:14, 62:10, 65:11, 66:12,
    67:8, 67:9, 67:10, 67:12,
    67:18, 68:1, 69:12, 70:20,
    75:25, 76:3, 76:4, 76:6 .
offenses 8:10, 13:10, 19:24,
    23:19, 23:21, 25:17, 25:20,
    27:23, 27:24, 28:12, 32:5,

62:7, 67:16, 67:17 .
offered 75:7 .
Office 3:16, 13:5, 13:6,
    69:20 .
OFFICER 9:2, 9:6, 9:21, 46:19,
    49:23, 50:7, 50:18, 50:22,
    50:24, 51:2, 52:17, 59:25,
    65:21, 66:2, 67:19, 68:5,
    70:7, 70:12, 76:19, 76:21,
    76:24 .
officers 50:20 .
Official 1:47, 77:28 .
Okay 3:9, 4:5, 5:1, 7:17, 19:6,
    23:17, 24:8, 26:8, 33:15,
    43:10, 46:2, 51:6, 51:16,
    51:19, 56:4, 56:7, 58:12,
    58:14, 60:24, 61:4, 72:16,
    73:20 .
old 48:18, 56:22 .
omissions 68:9 .
once 5:15, 45:21, 47:17,
    73:4 .
One 5:13, 5:17, 5:18, 10:8, 15:8,
    15:17, 20:10, 20:12, 21:2,
    21:25, 23:5, 24:10, 25:14,
    26:21, 33:12, 38:23, 39:6,
    39:9, 40:12, 40:25, 41:25,
    47:6, 48:5, 50:8, 51:6, 51:15,
    54:22, 56:22, 57:14, 57:25,
    58:13, 61:1, 66:16, 67:11,
    68:11, 69:2, 72:23, 74:20,
    76:8, 76:9, 77:1 .
one-level 35:5, 35:12 .
one. 43:11, 67:10 .
ones 8:3, 8:4, 8:5, 40:10, 40:19,
    43:25 .
ongoing 28:12 .
opinion 13:12, 54:24 .
opportunity 3:22, 4:6, 4:7, 4:10,
    43:12, 62:25, 63:19 .
opposed 19:20 .
opposite 59:14 .
order 25:20, 48:11, 60:2, 71:3,
    71:4, 71:15, 71:17, 73:7,
    75:10, 75:14 .
ordered 75:21 .
orders 70:19, 71:19 .
organized 53:1 .
original 7:7, 7:16, 26:15, 27:2,
    27:6, 70:22 .

originate 41:7 .
Others 39:18 .
Otherwise 34:9, 34:22,
    73:7 .
outside 9:3, 15:5 .
own 32:20, 35:9, 40:3,
    63:19 .
owner 14:12, 40:17 .
ownership 45:15 .
owning 7:3 .
.
.
< P > .
P. 52:12 .
p.m. 1:18, 2:2, 77:13 .
page 27:4, 27:18 .
pages 27:3 .
paid 11:17, 62:18 .
painted 60:8 .
paints 41:21, 44:4 .
paper 41:15, 46:6, 67:17 .
papers 32:13, 52:3, 59:12 .
paragraph 13:5, 23:12,
    74:1 .
paragraphs 66:25 .
Paralegal 1:38, 2:20 .
Pardon 57:21 .
parents 65:13 .
Park 49:24 .
part 6:7, 6:10, 7:16, 8:5, 15:3,
    15:19, 15:24, 19:20, 25:19,
    28:11, 30:17, 31:2, 34:23,
    43:6, 44:2, 45:5, 45:18,
    47:2 .
participate 70:5, 70:10 .
participation 70:7, 70:14 .
particular 18:8, 36:19, 52:2,
    63:17, 64:23, 69:12 .
Particularly 11:4, 40:24, 47:12,
    66:2 .
parties 8:3, 11:7, 12:3, 12:14,
    13:24, 29:23 .
parts 55:10, 61:15, 61:16,
    61:18 .
party 63:7 .
passed 52:25 .
passing 41:19 .
past 43:20, 43:25, 55:22,
    60:13 .
Patricia 1:28, 1:46, 2:12, 77:15,

77:27 .
**pay** 71:15, 71:18, 71:19 .
**penalties** 11:9, 11:12 .
**pending** 3:13, 75:2 .
**Pentagon** 65:24 .
**People** 15:24, 15:25, 30:20, 39:10, 41:6, 43:3, 43:12, 43:14, 43:18, 43:21, 45:2, 45:10, 45:13, 46:11, 46:17, 48:11, 48:15, 58:2, 60:9, 77:7 .
**Per** 36:4, 53:19 .
**percentage** 39:10 .
**performed** 75:1 .
**Perhaps** 34:8 .
**period** 11:14, 35:25 .
**Permission** 22:21, 51:24 .
**permit** 12:25, 38:1, 71:13, 73:5 .
**permitted** 12:19, 75:11 .
**perpetuating** 42:19 .
**person** 18:13, 18:15, 20:12, 27:10, 27:13, 27:19, 34:3, 34:4, 39:23, 45:22, 45:23, 48:12, 50:12, 51:1, 51:18, 52:3, 52:4, 52:6, 60:3, 60:7, 60:20, 61:2, 66:16, 66:20, 67:13, 67:15, 69:19, 75:10 .
**personal** 46:12, 65:11, 75:2 .
**perspective** 44:1, 49:12 .
**pertinent** 37:12 .
**phone** 15:7, 45:25, 61:18, 66:23 .
**Piccirilli** 1:10, 2:11, 2:19, 2:25, 3:2, 3:7, 3:9, 3:23, 4:5, 4:7, 6:20, 6:25, 7:23, 11:10, 12:17, 12:19, 13:19, 14:4, 14:8, 14:12, 14:15, 15:23, 16:10, 16:15, 17:21, 18:23, 23:1, 27:1, 27:3, 27:11, 27:17, 27:25, 28:13, 28:18, 29:13, 30:1, 30:9, 31:22, 32:10, 32:12, 33:4, 33:7, 33:10, 33:25, 34:19, 34:21, 35:18, 38:6, 40:2, 40:10, 40:14, 41:21, 42:18, 42:19, 43:22, 44:16, 44:19, 44:21, 45:8, 45:9, 45:17, 46:19, 47:7, 48:4, 48:12, 48:18,

50:2, 51:7, 51:9, 52:4, 52:5, 52:8, 52:15, 53:2, 53:11, 53:15, 54:6, 54:23, 55:14, 55:16, 55:21, 57:6, 57:20, 57:22, 58:6, 58:11, 58:19, 58:23, 59:19, 60:16, 61:18, 61:23, 62:5, 63:16, 63:17, 64:15, 65:2, 65:10, 65:15, 66:4, 66:8, 66:12, 66:14, 66:15, 66:19, 66:22, 67:3, 67:19, 68:4, 68:5, 68:10, 68:14, 68:18, 68:20, 68:22, 69:21, 70:3, 70:5, 70:16, 71:8, 71:15, 71:21, 72:12, 72:24, 73:13, 73:21, 74:3, 74:21, 75:1, 75:3, 75:6, 75:11, 75:20, 77:1, 77:9, 77:18 .
**pick** 20:23 .
**picture** 6:15, 56:17, 60:8 .
**Pineda** 23:24 .
**place** 4:2, 8:22, 16:3, 21:11, 23:8, 42:15, 44:9, 60:16, 72:14 .
**placed** 8:20, 46:18, 69:17 .
**places** 14:24, 16:2, 40:23, 40:24 .
**Plaintiff** 1:7, 1:25 .
**planet** 18:15 .
**play** 23:10 .
**plea** 3:13, 3:15, 6:11, 7:16, 8:4, 10:21, 10:23, 10:24, 10:25, 11:4, 11:5, 13:4, 13:17, 17:10, 17:15, 20:19, 23:12, 24:13, 27:3, 27:18, 27:21, 32:25, 35:10, 38:8, 68:25, 70:15, 71:9, 71:22, 72:7, 73:18, 73:20, 73:21, 73:24, 73:25, 74:1 .
**plead** 12:20, 13:25, 19:23, 24:4 .
**pleading** 13:19, 13:21, 19:19, 19:22, 24:10, 24:11, 33:1, 34:17 .
**pleadings** 12:13, 37:24 .
**Please** 2:7, 2:17, 3:1, 3:2, 3:3, 3:5, 6:24, 16:12, 49:4, 52:10, 55:12, 64:8, 74:2 .
**pled** 3:10, 7:1, 13:8, 13:14, 13:25, 15:1, 23:3, 23:9, 27:1,

28:3, 33:18, 61:10, 74:12, 74:21 .
**plural** 23:19 .
**plus** 29:18, 56:13 .
**podium** 15:14 .
**point** 6:17, 6:19, 13:23, 15:13, 22:9, 22:11, 25:11, 33:25, 34:21, 42:2, 47:12, 52:20, 62:23, 76:12 .
**point.** 47:8 .
**pointed** 34:18 .
**pointing** 31:22 .
**points** 19:8, 35:19, 35:20 .
**Police** 44:5, 46:19, 49:23, 49:24, 50:1, 50:7, 50:17, 50:19, 50:22, 50:23, 51:2, 52:16, 59:24, 65:21, 65:25, 66:2, 67:19, 68:5 .
**policemen** 58:10 .
**policy** 37:12, 72:7 .
**popping** 57:15 .
**pose** 75:9 .
**poses** 68:17 .
**position** 7:10, 7:21, 8:8, 8:15, 12:15, 12:18, 12:21, 13:24, 14:21, 16:4, 16:19, 17:1, 17:5, 22:24, 25:18, 25:23, 32:18, 42:24, 47:25, 63:6, 72:17, 72:18 .
**positions** 12:14, 13:1 .
**positive** 61:25 .
**possess** 12:20, 22:1, 25:15, 42:22, 44:9, 68:8, 69:23, 69:24 .
**possessed** 12:10, 12:16, 12:18, 13:16, 20:1, 20:2, 22:25, 26:21, 27:11, 28:13, 38:18, 66:13 .
**possesses** 67:13 .
**possessing** 13:9, 13:22, 21:4, 21:11, 27:5, 28:18, 43:19, 45:20, 68:10 .
**possession** 3:10, 7:3, 7:5, 7:9, 11:10, 14:21, 15:11, 19:5, 19:12, 19:16, 20:24, 21:5, 21:13, 26:20, 27:1, 28:1, 66:18, 68:16 .
**possessions** 24:22 .
**possessor** 22:1, 46:8 .
**possibility** 42:13 .

possible 31:21, 48:14, 72:15, 73:10, 73:11, 73:14 .
potential 66:22, 67:10, 67:12, 68:14 .
powers 71:10, 71:23 .
practice 40:20 .
precisely 58:15 .
preliminary 71:3 .
preparation 3:14 .
prepared 3:16, 4:16 .
Present 1:37, 2:19, 32:20, 33:9, 47:19 .
presentation 60:20 .
presented 65:1 .
presentence 3:14, 3:17, 3:18, 5:5, 5:6, 5:20, 5:23, 6:22, 8:23, 9:2, 9:7, 9:11, 9:12, 9:13, 9:23, 10:5, 10:12, 12:11, 29:6, 29:21, 63:5, 66:25 .
presentencing 6:3, 9:1 .
presenting 8:9 .
presiding 2:5 .
presume 11:21 .
presumed 69:6 .
pretend 51:3 .
Pretrial 7:25, 73:1, 73:2, 74:25, 75:8 .
pretty 38:17 .
previously 75:15 .
price 42:1 .
prior 14:2, 34:24, 35:5, 35:6, 35:19 .
prison 69:16, 75:23 .
Prisons 69:15, 72:14, 73:4, 73:9, 73:13, 75:7, 75:12 .
private 44:19 .
probable 9:10 .
Probably 45:18, 50:11, 54:9 .
PROBATION 1:37, 3:16, 9:2, 9:6, 9:21, 36:6, 47:16, 47:18, 62:16, 68:21, 68:23, 69:19, 70:7, 70:12, 76:19, 76:21, 76:24 .
problem 2:22, 15:9, 50:21, 76:12, 76:19 .
problems 4:25 .
Procedure 11:6, 70:17 .
procedures 70:23 .

proceed 4:16 .
proceeding 72:8 .
Proceedings 1:20, 1:40, 77:13, 77:17 .
process 20:19, 24:17, 36:21 .
produced 1:41 .
proffer 19:9 .
proffered 32:12, 41:21 .
proffers 63:8 .
program 70:6, 70:8, 70:11, 70:12, 70:14 .
prohibited 43:19, 45:20, 66:13, 66:15, 67:4, 68:19, 70:9 .
prohibiting 21:13 .
promote 37:4, 67:8, 67:23 .
property 50:14 .
prosecution 35:9 .
protect 37:6, 68:12 .
prototype 64:6 .
prototypes 16:24, 65:23 .
proud 50:12 .
prove 22:15, 31:18 .
provide 29:21, 36:8, 37:4, 37:8, 37:16, 67:8, 67:24 .
provided 7:23, 70:16, 71:11 .
provider 70:13 .
provides 11:12, 34:14, 35:4, 36:24 .
providing 9:20, 65:23 .
proving 32:14 .
provisions 70:25 .
proximity 28:14 .
PSR 6:2, 6:4 .
public 37:6, 39:3, 43:9, 44:23, 45:16, 45:18, 48:20, 67:12, 68:12, 68:15, 68:17 .
pull 38:23, 38:24 .
punished 62:8 .
punishment 37:5, 60:14, 60:15, 67:9, 67:24 .
purpose 41:9, 46:5, 69:11 .
purposes 11:2, 23:11, 27:12, 28:4, 28:8, 33:21, 34:23 .
Pursuant 9:18, 11:5, 26:10, 26:19, 26:23, 27:8, 27:13, 27:20, 28:8, 28:9, 29:20, 34:13, 36:6, 68:21, 70:17, 70:18, 70:22, 71:6, 71:9, 71:22 .

put 6:8, 10:13, 14:10, 24:16, 31:17, 34:22, 44:22, 47:3, 50:22, 52:3, 53:9, 59:12, 61:12, 73:1 .
putting 16:11 .
.
.
< Q > .
qualifies 7:5 .
question 6:25, 7:2, 14:19, 33:7, 36:14, 50:14, 62:3 .
questions 19:21, 56:9, 57:18 .
quite 21:23, 22:15, 24:13 .
.
.
< R > .
raise 3:3 .
raised 29:25, 30:17 .
raises 8:11, 29:18 .
random 61:2 .
rang 54:21 .
range 11:21, 11:23, 12:1, 35:22, 35:24, 37:20, 37:21, 38:8, 47:10, 64:24, 65:4, 65:7, 68:24, 69:5, 69:7 .
ranges 29:8, 29:17 .
rare 25:17 .
Rather 11:22, 76:9 .
read 3:25, 5:6, 5:9, 5:13, 5:15, 5:20, 51:21, 54:16, 55:16, 58:15 .
ready 4:4, 58:7 .
real 56:8 .
reality 19:11, 45:23 .
Really 6:16, 31:3, 31:6, 43:24, 44:25, 48:3, 54:25, 58:20 .
realm 15:6, 19:15 .
reason 4:1, 19:12, 43:15, 62:9, 72:2 .
reasonable 11:22, 65:7, 69:6, 69:10 .
reasons 38:13, 43:14, 45:14, 46:22, 47:19, 57:25, 65:8, 67:22, 69:4, 71:25 .
recall 32:25, 33:3 .
receipt 22:10, 22:17, 22:18 .
receipts 19:8, 22:18 .
receive 3:18, 51:7 .

**received** 74:25 .

**receiving** 51:23 .

**recent** 39:6 .

**recognizance** 75:2 .

**recognizes** 11:5 .

**recommend** 72:13, 73:9, 73:13 .

**recommendation** 45:9, 62:15, 72:17, 72:21 .

**recommendations** 73:8 .

**recommended** 70:1 .

**recommending** 38:6, 72:12 .

**record** 3:6, 32:1, 49:5, 52:11, 55:12, 64:12, 72:13, 77:17 .

**record.** 72:6 .

**recorded** 1:40 .

**records** 37:15 .

**redo** 30:18 .

**reduction** 29:24, 35:15, 64:13 .

**refer** 17:24 .

**referred** 7:14 .

**referring** 13:12, 17:25 .

**refers** 33:10 .

**reflect** 37:3, 62:6, 67:7 .

**reflects** 10:25 .

**regard** 7:15, 15:4, 22:10, 25:25, 26:9, 28:23, 29:19, 31:2, 31:12, 31:13, 33:10, 36:12, 36:15, 36:19, 37:25, 59:4, 64:14, 65:9, 66:11, 73:8, 74:24 .

**regarding** 12:3, 52:5 .

**regards** 54:3 .

**register** 18:14, 18:15, 18:24, 21:25, 27:15 .

**registered** 17:12, 18:13, 18:14, 18:18, 18:23, 18:25, 21:19, 21:20, 21:21, 21:22, 22:7, 22:23, 22:25, 23:2, 25:11, 25:15, 26:22, 27:10, 27:13, 27:19, 30:10, 30:11, 31:25, 62:12, 66:21 .

**registration** 21:19, 31:1, 41:5, 43:8 .

**regular** 40:18 .

**regulated** 41:14, 46:10 .

**regulations** 16:21, 21:25, 45:1, 70:6, 70:12 .

**Rehaif** 21:6 .

**reject** 68:21 .

**related** 28:11, 43:3 .

**relates** 33:17 .

**relationship** 56:15 .

**release** 11:14, 36:1, 65:6, 69:16, 69:17, 69:18, 69:21, 70:1, 70:4, 72:25, 73:3, 75:15, 75:16 .

**released** 57:2, 69:20, 75:10, 75:13 .

**relevant** 19:20, 20:5, 20:13, 21:18, 21:24, 22:13, 23:6, 23:11, 23:24, 23:25, 24:19, 25:24, 29:9, 32:7, 32:8, 38:2, 64:22 .

**reliability** 9:10 .

**relieve** 30:8 .

**relitigating** 20:21 .

**rely** 8:21 .

**relying** 45:2 .

**remain** 73:3, 75:13 .

**remaining** 9:16, 21:22, 42:22, 74:6, 74:19, 75:3 .

**remains** 45:23 .

**remember** 54:8, 57:25, 58:4, 58:14 .

**remind** 75:20 .

**remove** 53:21 .

**removing** 53:23, 54:1 .

**reopening** 20:21 .

**report** 3:14, 3:17, 3:19, 3:25, 4:3, 4:8, 4:14, 4:22, 5:5, 5:6, 5:17, 5:18, 5:20, 5:23, 6:8, 6:22, 7:25, 8:23, 9:2, 9:7, 9:11, 9:13, 9:24, 10:5, 10:12, 12:11, 29:7, 29:21, 63:6, 66:25, 69:19, 71:14, 74:25, 75:8, 75:21 .

**Reporter** 1:47, 77:28 .

**reports** 3:23 .

**representing** 2:19 .

**represents** 24:3 .

**request** 68:22 .

**requested** 9:7 .

**require** 20:7, 20:9, 35:11 .

**required** 11:22, 18:22, 21:24, 25:14, 27:15 .

**requirement** 12:24, 17:13, 17:25, 21:7 .

**requires** 7:9, 17:4 .

**requiring** 21:10 .

**residence** 14:3 .

**resolved** 5:17, 6:6, 6:7 .

**Respect** 11:9, 28:2, 37:4, 46:20, 47:1, 57:20, 57:22, 57:23, 63:9, 67:7, 67:8, 67:23, 68:12, 71:5 .

**respectfully** 5:8 .

**respective** 12:14 .

**respectively** 5:9 .

**respects** 30:25 .

**respond** 24:8 .

**response** 5:11, 10:1, 25:7, 30:22, 31:12, 31:19 .

**responses** 8:7 .

**responsibility** 6:9, 6:12, 6:20, 7:1, 7:2, 7:14, 7:24, 8:18, 9:4, 10:14, 10:19, 29:19, 29:22, 29:24, 30:1, 30:4, 30:5, 31:12, 31:23, 32:2, 32:4, 33:8, 34:10, 34:15, 34:16, 35:7, 35:16, 63:25, 64:10, 64:14 .

**responsible** 20:14, 30:13, 41:10, 60:3, 60:6, 68:7 .

**rest** 4:25 .

**restitution** 37:17, 71:18 .

**result** 67:5 .

**resumes** 2:4 .

**retired** 49:25 .

**returns** 71:14 .

**revealing** 59:22 .

**review** 3:22, 4:7 .

**reviewed** 4:22, 5:4, 37:23 .

**Richard** 1:34, 2:18 .

**rifle** 39:20 .

**rifles** 39:19 .

**rightfully** 34:20 .

**rights** 73:16 .

**rise** 2:3, 77:11 .

**risk** 46:18, 67:12 .

**RMR** 1:46, 77:15 .

**robot** 58:6 .

**rogue** 44:20, 60:8 .

**role** 67:19 .

**Rule** 11:5, 70:17 .

**rules** 70:6, 70:11 .

**run** 38:25, 76:8 .

**run-of-the-mill** 48:9 .

.
.

< S >.

safety 43:9, 68:17 .
sale 41:22, 41:23, 66:20, 67:2,
    68:16 .
sales 15:25, 16:18, 19:4,
    22:6 .
SALISBURY 52:12, 52:14,
    52:16, 52:19, 52:22, 52:24,
    53:3, 53:6, 53:8, 53:13,
    53:19, 53:25, 54:7, 54:9,
    54:12, 54:14, 54:17, 54:19,
    54:25, 55:4, 55:6 .
samples. 22:6 .
sat 2:21 .
satisfactorily 73:1, 75:1 .
satisfied 71:12 .
saying 13:18, 17:8, 25:9, 32:14,
    32:15, 39:15, 60:24 .
says 10:5, 13:5, 14:13, 17:9,
    17:11, 17:16, 17:23, 17:24,
    18:6, 18:10, 20:1, 39:15,
    39:20, 40:23, 43:9, 61:4 .
scenario 42:9, 43:16 .
school 58:6 .
schools 58:11 .
scienter 17:13, 17:25 .
screen 22:8 .
screens 19:11 .
SDT-19-060 2:11 .
sealed 72:6 .
search 7:4, 14:2, 28:15,
    67:5 .
searched 16:3 .
seated 2:6, 4:6, 5:2, 64:19 .
seats 4:20 .
Second 5:2, 8:12, 21:18, 24:18,
    41:1, 44:16, 44:24, 45:11,
    45:12, 46:4, 75:25 .
secondly 6:14 .
secret 45:15 .
secretary 52:24 .
Section 3:11, 6:8, 7:24, 7:25,
    8:3, 8:22, 9:4, 11:11, 11:25,
    12:6, 12:23, 26:18, 26:24,
    27:14, 27:21, 28:2, 28:4,
    28:6, 28:7, 28:10, 28:19,
    28:20, 29:10, 29:11, 29:14,
    29:20, 34:14, 35:4, 36:7,

36:10, 36:21, 36:23, 37:11,
    37:18, 38:1, 47:2, 63:9,
    64:25, 70:18, 70:23, 70:24,
    70:25, 71:7 .
sections 4:22 .
seek 70:16 .
seem 48:1 .
seems 6:5, 7:15 .
seized 67:5 .
self-acceptance 64:9 .
self-surrender 73:6 .
self-surrenders 73:4 .
sell 15:5, 16:18, 16:25, 60:23,
    61:1, 61:5, 62:2, 67:14, 68:8,
    68:11 .
seller 42:9 .
selling 45:22 .
send 46:10 .
sense 19:22, 19:25, 32:16,
    41:21, 42:3, 42:24, 77:4 .
sentence 11:3, 11:7, 36:3, 36:25,
    37:3, 37:7, 37:14, 37:22,
    38:12, 47:16, 47:17, 47:20,
    51:8, 51:13, 57:13, 62:5,
    62:16, 63:10, 63:12, 63:17,
    63:22, 65:3, 65:5, 65:7,
    68:22, 69:9, 72:2, 73:7,
    73:22, 75:23, 76:2, 76:3,
    76:4, 76:5, 76:7, 76:11 .
sentences 37:19, 76:8 .
Sentencing 1:21, 2:15, 4:2, 4:4,
    4:17, 4:24, 5:7, 5:10, 5:11,
    7:25, 8:11, 9:25, 10:23, 11:2,
    11:3, 11:19, 11:23, 11:24,
    12:5, 12:12, 13:6, 15:20,
    21:18, 24:19, 25:19, 26:10,
    27:20, 28:8, 28:9, 28:19,
    29:9, 29:11, 29:20, 32:15,
    33:21, 34:13, 34:23, 35:20,
    35:22, 35:24, 36:4, 36:6,
    36:20, 37:13, 37:14, 37:19,
    37:25, 39:1, 40:3, 45:14,
    48:3, 64:22, 65:4, 68:24,
    69:7, 69:8, 69:11, 70:1, 72:8,
    75:2 .
separate 19:21, 24:22 .
serial 22:20 .
series 10:14, 15:22, 28:12 .
serious 38:15, 47:25, 48:6, 48:7,
    60:14, 67:10, 67:11 .

seriousness 10:25, 37:3, 38:14,
    41:1, 41:16, 41:17, 67:7,
    67:16, 67:18, 67:25 .
serve 69:11 .
Service 62:18, 75:18,
    75:22 .
Services 74:25, 75:8 .
session 2:4 .
set 13:10, 23:12, 66:24,
    75:14 .
sets 41:25 .
setting 75:14 .
several 36:24, 38:13, 38:17,
    65:25 .
severe 62:5 .
shall 27:23, 69:17, 69:19, 70:3,
    71:1, 75:13, 75:17 .
shared 56:17 .
sheer 39:2 .
shift 13:4, 17:2, 17:7,
    24:12 .
shifted 24:10 .
shifting 25:1 .
shooter 39:7, 39:9 .
shooting 39:4, 40:6, 59:17 .
shops 66:1 .
short-barreled 39:19,
    39:20 .
shot 58:1 .
shouldn't 43:21, 61:4 .
show 20:22, 20:23, 31:18, 43:20,
    68:9 .
showing 22:22, 65:23 .
shown 22:10 .
side 20:17 .
significant 66:10 .
silence 40:4 .
silencers 40:2 .
silent 40:14 .
similar 18:5, 37:15, 37:16, 39:7,
    43:4 .
simple 14:2, 45:3 .
simply 6:15, 19:13, 22:10, 42:9,
    46:12, 47:12 .
single 23:9, 28:12 .
Sir 49:4 .
sister 14:3 .
sitting 51:18 .
situation 16:22, 20:11, 44:24,
    51:4 .

skilled 44:25 .
skip 21:16 .
slash 2:21 .
slightly 48:8 .
small 58:3 .
Smith 1:37 .
smoke 19:11, 22:8 .
society 41:13, 55:5, 62:1 .
sold 39:23 .
somebody 42:14, 44:25 .
someone 39:23, 39:24, 44:4, 44:20, 46:14, 46:15, 58:7 .
sometimes 50:19 .
son 55:17 .
sophisticated 44:10 .
sorry 35:2, 49:17, 53:25, 55:23, 62:20, 64:1 .
sort 6:16, 8:17, 20:5, 20:17, 21:7, 22:17, 24:9, 31:18, 41:13, 41:22, 42:13, 42:19, 42:25, 43:7, 43:20, 43:24, 44:1, 50:18, 59:16, 60:18 .
sought 6:21, 12:9 .
sound 26:16, 59:16, 59:20 .
sounds 30:4, 51:18 .
source 30:8 .
sources 44:14 .
space 28:14 .
span 39:11 .
special 11:15, 11:17, 36:2, 70:4, 71:20, 71:24 .
specific 12:4, 23:20, 24:6, 29:15, 43:16 .
Specifically 8:7, 24:6, 26:13, 27:4, 27:22, 29:9, 36:25, 40:19, 60:5 .
specified 26:12 .
specifies 12:8 .
spectrum 50:19 .
speeding 61:24 .
spoke 45:7, 66:22 .
spoken 73:15 .
spot 8:2 .
spree 28:12 .
stages 70:24 .
stand 3:1, 49:11 .
standard 43:10, 69:25, 75:15 .

standpoint 6:19 .
stands 11:10, 77:12 .
Staples 26:19 .
start 41:12, 72:3 .
started 42:17, 59:24 .
starting 20:20, 23:7, 29:5 .
starts 42:18 .
state 3:5, 18:20, 49:4, 52:10, 55:12, 65:24, 69:22, 71:14 .
stated 69:4, 72:2, 73:8 .
statement 6:11, 6:16, 13:9, 37:12, 64:14 .
statements 63:6, 66:23, 66:24 .
States 1:1, 1:5, 2:10, 2:12, 3:11, 3:16, 11:2, 11:19, 11:24, 13:6, 26:10, 26:18, 26:19, 27:20, 28:9, 29:9, 29:11, 29:20, 34:13, 36:6, 36:23, 37:25, 38:19, 39:5, 65:1, 65:25, 69:19, 70:1, 70:18, 70:22, 70:23, 71:7, 71:10, 71:23, 75:13, 75:18 .
status 14:8, 33:11, 52:5 .
statute 7:11, 11:13, 17:4, 17:6, 17:24, 18:3, 18:6, 20:3, 20:9, 20:23, 21:13, 21:24, 22:14, 23:20, 23:21, 25:12, 25:25, 26:3, 29:12, 61:17 .
statute-specific 24:1 .
statutes 20:15, 24:7, 43:9 .
statutorily 39:16 .
statutory 11:2, 11:9, 36:9, 71:6 .
stenographic 77:17 .
stenography 1:40 .
step 15:14, 51:24 .
Stephanie 1:22, 2:4 .
stick 31:20 .
stipulation 27:3, 27:18, 27:21 .
stock 39:7 .
stop 45:20, 45:21 .
stored 39:23, 39:24 .
story 42:21 .
Street 1:48, 61:1 .
Strict 17:13, 25:13, 25:17, 25:22, 26:2, 30:12, 43:8, 43:10, 48:8, 62:7, 62:9,

67:11 .
strictly 49:14 .
string 45:5 .
struck 20:18 .
stuff 24:1, 33:19, 64:6 .
subject 75:14 .
submit 21:14, 60:4, 70:8 .
submits 22:16 .
submitted 5:14, 12:13, 15:17, 15:19, 31:2, 54:15 .
substance 69:24, 70:5, 70:8, 70:9 .
substantially 21:8 .
subverts 42:15 .
successive 22:1 .
sufficient 9:9, 38:11, 46:23, 69:10 .
sufficiently 28:10, 32:12, 69:1 .
suggest 17:17, 34:9, 44:21, 60:15, 62:4 .
suggestion 18:4, 62:14 .
sum 23:22, 46:14 .
summarize 14:11 .
sums 58:21 .
Superseding 3:12, 74:13, 74:20 .
supervise 70:7, 70:13 .
supervised 11:14, 35:25, 65:6, 69:17, 69:21, 69:25, 70:4 .
supplied 6:3, 8:25 .
support 9:10, 12:13, 13:1, 55:19, 58:16, 65:13, 65:15, 69:1, 73:11 .
supported 67:25 .
supporting 77:7 .
supposed 21:10, 22:4, 22:5, 32:1, 40:17, 40:21, 45:4, 46:6, 48:19, 66:20 .
suppress 59:20 .
suppresses 59:16 .
suppressor 59:11, 59:13, 59:15 .
suppressors 26:16, 39:25 .
Supreme 38:16, 39:20, 47:15, 59:7 .
surrender 74:24, 75:6, 75:11, 75:18, 76:1 .
surrendering 75:3 .

**suspect** 51:1 .
**sustain** 32:12 .
**switch** 24:23 .
**swivel** 56:24 .
**sworn** 65:21 .
**sworn.** 3:4 .
**Sykesville** 50:1, 50:3, 50:7 .
**system** 31:19, 42:15 .
.

**< T >** .
**table** 2:13, 2:21, 24:20, 35:20, 36:4, 55:25 .
**talked** 18:8, 59:11 .
**targets** 39:22 .
**Tax** 13:20, 25:11, 30:12, 33:6, 41:4, 46:4, 48:6, 71:14 .
**technical** 6:16, 6:18 .
**television** 56:11, 59:15 .
**tells** 32:3 .
**ten** 30:21, 52:19 .
**tendencies** 43:20 .
**term** 11:13, 35:24, 53:8, 67:22, 67:25, 68:3, 69:16, 69:17, 76:5, 76:7 .
**terms** 21:20, 31:19, 31:23, 36:18, 43:8, 45:22, 69:25 .
**testimony** 49:14, 51:22, 63:8 .
**testing** 70:8 .
**Thacker** 1:22, 2:4 .
**Thanks** 10:21 .
**thereafter** 42:1 .
**thin** 42:6 .
**third** 48:12, 55:9 .
**third-point** 35:15 .
**Though** 36:8, 68:20, 69:6 .
**threat** 68:17 .
**three** 26:22, 47:3, 47:4, 60:1 .
**three-point** 64:13 .
**throw** 20:14 .
**ticket** 61:24 .
**tied** 24:6 .
**timely** 35:9 .
**Title** 13:17, 13:22, 19:17, 19:25, 25:20, 34:1, 34:8, 36:23, 64:25, 67:17 .
**Tobacco** 66:17 .

**today** 2:14, 4:2, 4:17, 5:15, 9:8, 30:15, 33:21, 37:25, 51:17, 51:23, 63:7, 65:1, 65:15, 76:2, 77:8 .
**together** 13:11, 28:9, 48:17, 55:19, 61:12, 61:16 .
**tolerated** 46:13 .
**took** 15:23 .
**top** 27:4, 38:9 .
**total** 29:5, 29:7, 29:16, 35:17, 35:18, 35:23, 36:4, 48:15, 71:11, 71:24 .
**track** 41:7, 42:16, 44:22 .
**tracks** 56:20 .
**trail** 41:15, 46:6, 67:17 .
**train** 56:19 .
**training** 37:9 .
**transaction** 41:22, 42:1, 42:3, 42:7, 46:2 .
**transactions** 45:2, 46:15 .
**TRANSCRIPT** 1:20, 1:40, 77:16 .
**transfer** 15:8, 33:1, 57:16 .
**transmitted** 14:6 .
**treated** 27:23, 28:7 .
**treatment** 37:9, 70:10, 70:11, 70:13 .
**trial** 34:17 .
**tried** 22:3 .
**tries** 41:23, 41:24, 42:14, 55:2 .
**trigger** 38:23, 38:24 .
**trouble** 31:4 .
**true** 17:24, 44:17 .
**trust** 50:13, 66:3 .
**trusting** 50:11 .
**truthful** 32:6, 41:6 .
**truthfully** 32:4, 34:17 .
**try** 15:24, 16:18, 31:20, 32:24, 39:1 .
**trying** 15:7, 16:25, 20:19, 42:11, 43:2, 58:3, 59:10, 61:6, 62:2 .
**tussles** 56:12 .
**twice** 45:21 .
**two** 8:7, 19:7, 19:21, 26:21, 34:9, 38:20, 44:12, 44:13, 48:11, 48:14, 54:9, 55:18, 58:1, 75:20 .
**two-level** 29:21, 29:24, 31:13,

34:14, 35:1 .
**two.** 65:19 .
**type** 38:16, 39:14, 40:8, 41:2, 42:19, 43:1, 44:19, 46:12, 46:16, 46:17, 67:15 .
**types** 66:8, 67:16, 67:20 .
**typical** 44:17, 44:18 .
.
.
**< U >** .
**ultimate** 10:5 .
**ultimately** 60:1 .
**Unbeknownst** 14:11 .
**unclear** 76:11 .
**uncooperative** 51:1 .
**undermine** 8:17, 11:1 .
**undermining** 46:20 .
**underscore** 40:3 .
**understand** 4:13, 5:1, 6:1, 7:17, 9:15, 17:20, 25:8, 45:10, 45:13, 45:17, 47:22, 49:2, 55:18, 56:10, 64:1, 64:14, 73:24, 77:4 .
**understanding** 9:18, 23:8, 26:5, 31:4, 33:11 .
**understands** 12:14, 12:17, 12:21, 30:9, 30:15, 30:16, 32:23 .
**Understood** 55:11 .
**unit** 71:13 .
**United** 1:1, 1:5, 2:10, 2:12, 3:11, 3:16, 11:2, 11:19, 11:24, 13:5, 13:6, 26:10, 26:18, 26:19, 27:20, 28:9, 29:9, 29:10, 29:20, 34:13, 36:6, 36:23, 37:25, 38:19, 39:5, 65:1, 65:25, 69:19, 70:1, 70:18, 70:22, 70:23, 71:6, 71:10, 71:23, 75:13, 75:18 .
**unknown** 39:23 .
**unlawful** 7:9, 17:8, 17:12, 19:5, 19:13, 20:10, 20:12, 20:15, 20:24, 22:13, 24:14, 24:22, 26:23, 27:8, 42:3, 66:20, 66:23, 67:3, 68:8 .
**unlawfully** 12:9, 12:10, 12:16, 12:18, 20:1, 20:2, 22:25, 28:18, 66:12, 69:24 .
**unlicensed** 67:13 .

**unregistered** 3:10, 11:11, 26:20, 26:25, 28:1, 31:6, 42:6, 42:11, 42:25, 48:5, 61:5, 62:2, 66:16, 66:19, 66:21, 67:13, 68:8, 68:11, 68:16 .
**Until** 10:23, 38:25, 65:16, 71:11, 73:3 .
**unusual** 25:13 .
**unwarranted** 37:14 .
**upbringing** 65:13 .
**uphold** 65:21 .
**upset** 57:6, 57:7 .
**USC** 7:8, 7:13, 11:11, 12:23, 13:16, 13:20, 17:3, 17:13, 25:12, 26:23, 28:1, 28:4, 28:6, 28:19, 29:10, 29:14, 33:22, 36:10, 36:20, 70:25 .
**user** 53:21 .
**using** 16:18, 19:4 .
**usual** 25:9 .

**< V >.**
**v.** 26:19 .
**variance** 65:3, 68:22, 68:23, 69:2 .
**variety** 40:8, 41:2, 45:13 .
**various** 72:25 .
**vary** 69:5 .
**vehicle** 67:4 .
**versus** 2:10, 77:17 .
**vetted** 60:4 .
**vibrates** 59:17 .
**victim** 71:16 .
**victims** 37:17, 50:25 .
**view** 31:17, 32:10, 32:13, 32:19, 32:20, 33:25, 42:2, 51:9, 71:14 .
**violate** 68:10 .
**violated** 64:2 .
**violating** 11:13, 28:3, 28:6 .
**violation** 3:11, 7:11, 11:11, 13:16, 13:17, 13:20, 13:22, 17:3, 17:4, 17:5, 18:18, 18:19, 25:11, 28:1, 28:19, 29:10, 29:12, 33:6, 33:20, 34:1, 34:7, 36:10, 41:4 .
**violence** 43:25 .

**vocational** 37:8 .
**voluntarily** 75:3, 75:6, 75:11, 75:17 .
**voluntary** 74:24, 76:1 .
**vs** 1:8 .

**< W >.**
**W.** 1:48 .
**wait** 17:11 .
**waiting** 42:23 .
**waived** 73:21 .
**waiver** 73:24 .
**waives** 73:18 .
**walk** 56:23 .
**walked** 56:23 .
**walks** 56:11 .
**wanted** 15:25, 18:24, 50:21, 50:22, 73:22 .
**wants** 8:21, 55:1 .
**warrant** 28:11 .
**warrants** 67:5 .
**ways** 8:16, 38:15, 38:20, 44:10, 66:1, 66:7 .
**weapon** 30:10, 38:22, 40:13, 60:17, 60:23, 61:8, 61:11, 61:13, 67:15 .
**weapons** 7:3, 7:5, 7:9, 7:10, 13:22, 14:20, 14:23, 15:8, 15:22, 16:1, 16:25, 18:12, 18:17, 25:10, 31:5, 39:22, 40:4, 46:13, 59:25, 62:2, 65:24, 66:9, 67:14, 67:21 .
**weeks** 54:9 .
**weight** 64:23 .
**whatever** 58:1 .
**whatsoever** 22:2, 41:15, 75:25 .
**whether** 6:19, 7:5, 7:22, 8:13, 29:23, 29:25, 34:1, 44:8, 51:7, 51:9, 53:15, 61:16, 72:9 .
**whichever** 22:13 .
**wife** 50:13 .
**Will** 2:7, 10:6, 10:18, 11:1, 11:3, 11:25, 12:2, 12:25, 19:14, 21:1, 28:20, 33:9, 35:2, 37:21, 37:25, 51:7, 52:7, 56:2, 62:6, 63:9, 70:7, 70:13,

73:5, 73:9, 73:12, 73:18, 74:2, 75:5, 77:8 .
**win** 55:2 .
**wipe** 69:2 .
**Within** 21:25, 26:17, 47:11, 61:6, 62:18, 65:3, 65:6, 65:16, 66:5, 69:18, 74:4 .
**without** 34:9, 45:3, 59:21, 62:17 .
**witness** 33:9, 55:10, 59:1 .
**Witnesses** 33:13, 47:4, 47:5, 47:6, 49:1, 50:25, 59:2, 59:3, 63:8 .
**woman** 48:19 .
**women** 58:3 .
**words** 30:19 .
**work** 14:22, 50:5, 52:20, 53:2, 53:4, 62:17 .
**worked** 14:20, 34:4, 34:5, 52:4, 56:8, 60:12 .
**working** 44:5, 58:7, 59:10, 59:23, 61:15, 65:20, 66:17 .
**works** 44:15 .
**world** 50:15, 50:16 .
**worry** 64:8 .
**worst** 42:13, 48:2 .
**writes** 14:13 .
**writing** 74:4 .
**written** 3:17 .
**wrote** 33:20, 58:16 .

**< Y >.**
**year** 17:19, 50:3, 55:22, 56:22, 76:8 .
**years** 11:14, 11:15, 34:6, 36:1, 49:23, 49:24, 49:25, 52:19, 59:9, 60:13, 60:18, 61:23, 61:24, 65:5, 65:22, 66:4, 68:23, 69:18, 75:23, 76:6 .

**< Z >.**
**zero** 35:18, 35:20 .
**zone** 36:5, 47:11 .